### Fish *vs.* The Mayor, &c. of Rochester,

Where the chartered limits of the city of Rochester included a street which before the incorporation of the city had been regularly laid out and appropriated to the public use as a common highway; *Held* that the city corporation had, by its charter, power and authority to improve, level and grade such highway as one of the streets of the city, without making compensation to the owner of the adjacent land for damages sustained by him in altering the grade of and levelling such street.

Whether the earth necessarily removed in altering the grade of a street in the city of Rochester, and which is not wanted for the improvement of the same street, belongs to the corporation or to the owner of the land over which the original highway was laid out ? *Quære.*

January 23.

This was an appeal from a decision of the vice chancellor of the eighth circuit, refusing an injunction to stay the proceedings of the corporation of the city of Rochester in levelling, grading, and macadamizing Monroe street in front of the complainant's dwelling house and premises. The bill charged that the corporation, by its superintendants and agents, was proceeding to dig down and remove the earth of the street in front of the complainant's premises, under color of an ordinance to macadamize and grade Monroe street, which street was originally laid out as a public highway or state road, but was now within the chartered limits of the city ; by which proceedings, the complainant alleged his premises would be irreparably injured. He also charged, in his bill, that under the ordinance for grading

and macadamizing Monroe street he had been assessed $136, for the improvement; which assessment the corporation intended to collect, although he was not benefitted, but was actually injured thereby to the extent of from fifteen hundred to two thousand dollars. The vice chancellor decided that the common council of the city were authorized by their charter to pass the ordinance and improve the street in the manner contemplated; and that as the land over which the street was laid out had been originally dedicated to the public, or been paid for when it was laid out as a public highway, the owner of the adjacent land was not entitled to any additional compensation for the injury his premises might sustain by the exercise of the right of improving the street in a reasonable manner. And as the complainant had not alleged in his bill that the defendants were exercising their authority, to improve the street, in bad faith and without reference to the convenience of the public, that this bill for an injunction could not be sustained. The injunction was therefore refused, and from this decision the complainant appealed.

*M. T. Reynolds,* for the complainant. The acts of the defendants were unauthorized and unconstitutional, as there was no payment or offer of payment of the damages to the appellant, and no appraisement was even made. If the defendants have the power, by the charter of the city of Rochester, to improve streets by levelling, &c. it should not be exercised so as to work a positive injury, or destruction of property, or even to affect individual rights. In this case the extent of the grade was unnecessary for the convenience of the travelling public, for whose use the improvement is designed. No municipal corporation has the power to take private property for purposes of ornament merely.

The defendants have no right to appropriate to their own use the soil of the street removed in making the excavation. Such soil is the property of the owner of the fee— the public having only the right of way over the land. And the defendants ought also to be restrained from collect-

ing their assessment, as they are only authorized to assess persons who are benefitted by the improvement. (*Const. Art.* 7, § 7. *Gardiner* v. *Village of Newburgh,* 2 *John. Ch.* 162. 1 *Black. Com.* 141. *Canal Com.* v. *The People,* 5 *Wendell,* 452. 6 *Cowen,* 518. *Varick* v. *Smith and Att'y. Gen'l.* 5 *Paige,* 137. 2 *Kent's Com.* 339. *In the matter of Albany street, city of New-York,* 11 *Wendell,* 149, *and cases cited.* 1 *Kent's Com.* 452. 2 *id.* 296. 2 *John. Ch.* 473, 463. 1 *Paige,* 416. 3 *John. Ch.* 282. 1 *Paige,* 448. 6 *John. Ch.* 439. 1 *Hopk.* 419. 5 *John. Ch.* 101. 2 *John.* 362. 1 *Bur.* 143. 6 *East,* 154. 3 *Kent's Com.* 432.)

*A. Taber,* for the defendants. The ordinance providing for the grading and macadamizing the street in question is clearly within the powers conferred upon the defendants by the charter of the city of Rochester. An assessment of the damages, &c. occasioned by the levelling and grading of the street was not necessary, as the charter makes no provision for an assessment; and as the assessors appointed to apportion the expense of the improvement decided that the complainant was benefitted and not damaged by it, and there has been no appeal from their assessment. No private property has here been taken for the public use. The common council assumed no such power. The complainant either dedicated the lands occupied by the street to the public, or he received his compensation therefor according to law when the road was laid out; and he was compensated either by the enhanced value of his property in consequence of having the highway there, or in money received for his damages. The public acquired not only a right of way over these premises, but also a right to the use of the soil for every purpose necessary to the enjoyment of that privilege. (15 *John.* 453. 6 *Pick.* 48.) In cities the streets belong in a more complete manner to the public than country highways. (8 *Wendell,* 85.)

The complainant had a remedy at law. It is a trespass, if any thing, for which redress can be had—not an irreparable injury. (*Jerome* v. *Ross,* 7 *John. Ch. R.* 315.) The

complainant should have sought his remedy by mandamus or certiorari to review the proceedings of the common council.

THE CHANCELLOR. It appears from the complainant's bill that what is now Munro street, in the city of Rochester, was long since laid out as a public highway or road, under the authority of an act of the legislature of this state. It must, therefore, be presumed that the then owner of the premises dedicated the land to the use of the public, as a highway or street; or that he received compensation therefor in conformity to the laws then in force on that subject. The vice chancellor is therefore correct in supposing that the public have not only acquired the right of passage, but also the right or privilege of levelling, grading, or otherwise improving the street in such manner as shall render it most convenient and beneficial to the public for the purposes for which it was thus dedicated or taken, and in reference to the present and future situation of that part of the country, as well as its situation when the road was laid out. And as the present state of improvements at that place have thrown it into the chartered limits of a city, the public have a right to improve it in such a manner as to render it a convenient street or passage for the dense population of a city, and in reference to city business, without paying any further compensation to the owner of the soil over which such street passes, or to those who have succeeded to his rights.

By their charter, the common council of the city of Rochester are made commissioners of highways for the city; and it is their duty to regulate and give directions for repairing, preserving and improving the highways, streets, alleys, &c. and they are empowered to grade and improve the same, in the manner provided for in the ordinance in this case. (*Laws of* 1834, *p.* 313, *tit.* 7, § 1 *and* 10.) The legislature having given to the corporation the discretionary power and authority of deciding when and in what manner the streets and highways shall be regulated, graded and improved, this court is not legally authorized to interfere with or control that discretion, unless it is exercised in bad faith.

so as to amount to a fraud upon the rights or interests of the complainant. As no such allegation is made in this bill, his remedy, if he has any, is in a different tribunal.

So far as relates to the injury, if any, in removing the earth or gravel which is necessarily taken out in reducing the grade of the street, and using it in repairing or improving other streets of the city, it cannot form a proper subject of relief in this court even if the complainant is right in supposing that such earth or gravel belongs to him. It is not alleged in the bill that he either offered or was willing to make the necessary excavation himself, and that the common council refused to permit him to have the sand and gravel so removed; and they certainly were not bound to remove it for him and to deposit it in such place as he should direct. I believe it is the common practice of public officers having the care of public roads, to take the materials which are removed from one part of the highway, under their direction, in improving the road at that point, and deposit them wherever they may be wanted for the repair or improvement of the highway in other places; even beyond the boundaries of the lands opposite to where the materials were taken. The only restriction upon this power of which I am aware, is that contained in the 126th section of the title of the revised statutes relative to highways and bridges, (1 *R. S.* 525,) which gives to the owner or occupant of land over which a highway is laid out, the use of the trees thereon, except such as are requisite to make or repair the highways or bridges on the same land. This legislative restriction of the right to use trees, or limiting it to repairs of the road within the same lands, appears to be founded upon the supposition that without such restriction they might be used to repair or improve other parts of the highway; and as the restriction is confined to trees, other materials may be used beyond the bounds of the land from which they are taken. Trees, when cut down, may be left without much inconvenience by the side of the highway, until the owner of the land through which the road runs has a reasonable time to remove them. But when it is necessary to excavate earth or gravel, it must be

removed entirely, or the work cannot be completed, and must be done anew. And it cannot be deposited upon lands adjacent to the highway without the consent of the owners of such land. When in a state of removal, therefore, it does not appear to be susceptible of any distinct ownership, except in those under whose authority or by whom such removal is made.

This does not appear to be a case in which, by the city charter, an appraisal of damages is necessary, before the common council can proceed to grade and improve a road or street already laid out and paid for, or otherwise dedicated to the public. The decision of the vice chancellor, therefore, appears to have been right in this case, in refusing the injunction as asked for by the complainant, and the order appealed from must be affirmed, with costs.