BAY STATE BRICK COMPANY *vs.* JOSHUA T. FOSTER & others.
ATTORNEY GENERAL *vs.* BAY STATE BRICK COMPANY.

Suffolk.   March 30, 31. — September 4, 1874.   AMES & DEVENS, JJ.,
absent.

The decision of surveyors of highways, acting within the scope of their authority,
under the Gen. Sts. *c.* 44, § 8, that a structure in the highway is an obstruction to
public travel, is conclusive; and evidence is not admissible to show that the struc-
ture is not in fact an obstruction, or that the removal of the obstruction will seri-
ously incommode and damage the person who placed it there; or that the surveyors
did not act in good faith, in deciding that it was an obstruction to public travel.

The fact that the persons chosen to be surveyors of highways are selectmen of
the town, does not prevent their acting as surveyors, nor invalidate their acts in
that capacity.

The fact that the rails of a private railroad were placed on a highway by the per-
mission of the town authorities, who permitted them to remain there for a series
of years, does not prevent the surveyors of highways from removing them if they
deem them an obstruction to public travel.

A manufacturing corporation owning the land on both sides of, and the fee in, a
highway, laid railroad tracks across the highway; the surveyors of highways hav-
ing decided that such use of the highway was an obstruction to travel, the attor-
ney general, at the relation of the surveyors, filed an information for an injunction
to prevent the continuance of such use. *Held*, that the injury to the right of the
public was not of such a nature as to require the extraordinary process of injunc-
tion.

THE FIRST CASE was a bill in equity against the surveyors of
highways in the town of Medford.   The bill alleged in substance
that the plaintiff corporation was and long had been engaged in
the manufacture of bricks on its own land; that it owned the
land on both sides of Riverside Avenue, a highway in the town
of Medford, and the fee in the soil of the avenue itself, subject
only to the public easement; that for the purpose of reaching the
railroad, by which the bricks of the corporation were carried to
Boston, it was obliged to lay iron rails across said highway, on
which its cars loaded with bricks could run; that this track was
laid with the consent of the town, was no obstruction or incon-
venience to the use of the way, and was indispensable to the
prosecution of the company's business; that the defendants
threatened to take the rails up, not for the benefit of the pub-
lic, or in the discharge of any public duty, but instigated by
the private malice and for the selfish purposes of an individual,
and in order to extort money from the corporation.   The bill

prayed for an injunction against the removal of the rails and for general relief.

The defendants in their answer demurred to the bill, for the reason that the plaintiff had a plain, adequate and complete remedy at law, and averred that the railroad track was an inconvenience, and an unlawful obstruction to public travel; and that in pursuance of their right and duty, as surveyors of highways, they had ordered it to be removed.

THE SECOND CASE was an information by the attorney general at the relation of the surveyors of highways, charging the Bay State Brick Company with having unlawfully obstructed a public highway in Medford, called Riverside Avenue, by laying and maintaining a railway across it, and by using said railway for the transportation, by means of locomotive engines, of cars and wagons loaded with bricks, and thereby making the highway unsafe and inconvenient; that the corporation had been ordered by the surveyors of highways to remove the track, and refused, and still refuse, to do so. The prayer was for an injunction forbidding the maintenance and use of said track.

The answer contained a demurrer, and also set up in defence the matters stated in the bill in the first case.

The two cases were heard together, before *Ames*, J., who reserved them for the consideration of the full court, upon a report, in substance as follows:

Evidence was offered to prove the title of the plaintiff in the first action, to the soil in the highway and on both sides of it; and numerous witnesses on the part of the Bay State Brick Company were called and sworn, but before their examination, the counsel for that company was called upon to explain what he proposed to prove by them; and it appearing that the claim on the part of the Commonwealth and of the surveyors was, that the matters and things proposed to be proved would not sustain the corporation in its defence in the second case, or enable it to maintain the case stated in the first case, it was proposed and ordered by the court that the cases should be reserved upon the pleadings and the various offers of proof submitted by the said corporation.

The counsel for the corporation then offered to show that the rails were originally laid down upon application to, and with leave from, the highway surveyors of the town of Medford; and that they have remained and been used with the knowledge, sanction and approval, express and implied, of the successive boards of selectmen or highway surveyors of the town, from 1863 down to the summer of 1873, when the selectmen first made complaint; that this interference by the selectmen was expressly stated to the company's agent to be, not because they believed the rails to be any incumbrance or hindrance or obstruction to the highway, or that they rendered it unsafe or inconvenient, but because a man named Wellington complained of them, and insisted upon their doing it; that Wellington, assuming to act in behalf and with the authority of the town, communicated to the plaintiff in the first suit, that if it would pay him a sum of money, it might have the use of the track.

It was not contended that the selectmen went to the company, or authorized Wellington to go in their behalf, understanding that he was to get money for them. The company's offer was to prove that the whole thing was stirred up and started by Wellington, at his instigation, from corrupt motives, and that the surveyors were made his tools, unwittingly perhaps. And it was insisted that such was the proper inference from the facts proved or offered in proof.

The company further offered to prove that, as a matter of fact, the mode of occupation and use of the highway were entirely unobjectionable; that there was no plausible pretext or cause for any interference on the part of the surveyors of highways; that there was no justification in fact for their interference, and no reason by which they would be justified in interfering, in the honest belief that it was necessary for the protection of the public; that in the summer of 1873, at the instance of said Wellington, the surveyors caused the rails to be removed; that afterwards, upon the request and at the expense of the brick company, a written opinion on the subject was obtained from Sidney Bartlett, Esq., and communicated to the defendants; and the track was relaid by the company in pursuance of and in conformity to that advice; and that it was so laid that it cannot reasonably and in fact be said to obstruct the way, or to come within the Gen.

Sts. *c* 44, § 8; that this relaying was with the sanction and approval. of the surveyors, and that they could not honestly and reasonably consider the track so relaid to be an obstruction coming within the section above referred to; and that neither in fact nor in law was it a nuisance; that after the rails were so laid the company proceeded to use them; and that then, without any change of facts or circumstances, and without any official action or vote of the board at any meeting, the surveyors notified the company to remove the rails by October 18, informing it that if it did not do so, the surveyors would do it themselves; and they were about to do so when the bill was filed.

The corporation also offered to show such a general state of facts and circumstances as would justify the court in inferring that the action and proposed action of the board was an abuse of their legal authority and position, and an illegal exercise of it; and that their action and proposed action were an abuse of their legal authority, and a known violation of their official duty.

It was agreed that the selectmen of the town were made surveyors of highways; and a record of the doings of the surveyors, authorizing the removal of the rails, was put in evidence.

It was proved that Riverside Avenue, formerly known as Ship Street, was an ancient way leading from Medford Square over the company's land; that the town at various times had caused it to be repaired, and had by vote caused it to be laid out at an increased width; that it leads to the Wellington Farm, so called, and is there closed by a gate; that it is used mostly in going to and from that farm and six or eight houses in the neighborhood; that it has been more than once widened by the town, and that it is not very much travelled.

*A. A. Ranney*, for the Bay State Brick Company. 1. The owner of the fee in land over which a way runs has a legal right to do with it whatever he pleases, so long as his use of it does not interfere and is not inconsistent with its use by the public. *Vestry of St. Mary* v. *Jacobs*, L. R. 7 Q. B. 47. *Perley* v. *Chandler*, 6 Mass. 454. *Adams* v. *Emerson*, 6 Pick. 57. *Harrington* v. *County Commissioners*, 22 Pick. 263. *Atkins* v. *Bordman*, 2 Met. 457. *Woburn* v. *Henshaw*, 101 Mass. 193.

2. In the exercise of the right of eminent domain, certain boards, or persons, are invested with a judicial power and the ex

clusive right of determining when public necessity or convenience requires that private property be laid out as a highway. Gen. Sts. *c.* 43, §§ 4, 5. But the provisions for removal of obstructions in Gen. Sts. *c.* 44, §§ 1, 8, vest no such judicial power of determination in the selectmen or highway surveyors.

*S. Bartlett, contra.*

ENDICOTT, J. These cases involve the same questions, and were argued together.

In the first case the Bay State Brick Company seeks to enjoin the highway surveyors of the town of Medford from disturbing or removing certain railroad tracks, which the company has laid across a public highway in the town, known as Riverside Avenue, for the purpose of transporting bricks and other merchandise by steam power. These tracks cross the highway at right angles; the plaintiff is the owner of the land on each side of the highway at that point, and it is conceded that it also owns the fee of the land occupied by the way. It contends that these tracks were laid with the permission and sanction of the selectmen and surveyors of Medford, and had so remained, and were used by the plaintiff for a series of years, until the defendants in their official capacity caused them to be removed, as obstructions to public travel and the proper use of the highway; that being the owner of the soil, it can make use of the highway for any purpose consistent with the public easement, and that its tracks are so constructed that there is no obstruction to public travel, and that the use of the highway for such a purpose is not incompatible with the public easement.

The right here asserted, to remain in the owner of the soil of a public way, is to construct railroad tracks upon which to run cars by steam power, across that portion of the way worked and used for public travel, and thus to form a connection between lots of land on either side of the way.

This necessarily involves the right to enter upon and tear up the surface of the travelled way, to place a permanent structure therein, and to make changes more or less extensive, for the purpose of establishing a method of passage and transportation, very different if not inconsistent with the method of passage and transportation to which the public easement has devoted the same portion of the way. If the plaintiff has this right, any

owner having similar title may construct and maintain in the highway similar structures and methods of transportation; and the highways may be crossed at any point by railroad tracks, which the town authorities cannot remove, if built as railroad tracks duly authorized are built. We are not aware of any case where the familiar principle, that the owner of the soil retains all rights not incompatible with the public easement, has been carried to this extent. But it is not necessary to review the cases on this subject, or to determine the precise extent of the rights of the owner in this regard. This case is not to be confounded with those cases where the legislature, having given by statute easements in a public way to other corporations, as to water, gas, railroad or telegraph companies, a bill in equity may lie to restrain one in the exercise of its easement from encroaching upon the privileges of another. There, the question is of the rights of different parties enjoying easements in the same way; here, the plaintiff having placed certain structures on the travelled way, in the attempted exercise of its rights as owner of the soil, and the surveyors having decided, as matter of repair, that such structures interfere with public travel and the proper use of the way, the only question is whether this court sitting in equity will review that decision.

Whether the plaintiff has such right or not, in the exercise of that right it is very clear that it cannot interfere with or incommode the public travel. In the large class of analogous cases, where the owner of the soil may cultivate the soil of the way, take off the herbage, cut down the trees, remove the soil, or construct a watercourse, he must exercise his right in subordination to the public easement, and in such a manner as not to put any obstruction in the way, or incommode, hinder or endanger persons travelling thereon. If he cannot so exercise this right, either by reason of the manner in which he is obliged to do it, or by reason of the necessities of travel on that particular highway, then such exercise of the right is incompatible with the public easement, and as a right it may be said to cease to exist.

This plaintiff has an undoubted right to transport bricks and merchandise across this highway, but if it attempts to do so, by structures placed in the surface of the travelled way, that the proper authorities charged with the care of the highways decide

to be obstructions to public travel, they may be removed. The case is presented, when it is the duty of the surveyors to act as directed by Gen. Sts. *c.* 44, § 8; and this court will not review their judgment and pass upon the question whether there was an obstruction or not. *Benjamin* v. *Wheeler*, 8 Gray, 409, and 15 Gray, 486. *Heald* v. *Lang*, 98 Mass. 581. It is merely a question of repair, where the discretion of the surveyors, when exercised, is decisive, as it is in many other cases where town officers are called upon to act. See *Higginson* v. *Nahant*, 11 Allen, 530.

The exception to the jurisdiction of the surveyors because they were also chosen selectmen we do not consider well taken. It was held in *Benjamin* v. *Wheeler*, 15 Gray, 490, that if the acceptance by a selectman of the office of surveyor incapacitates him from holding the office of selectman, it would by no means follow that as surveyor of highways he could not proceed with the discharge of his duties.

Nor were the surveyors prevented from acting in the premises because the rails were placed there, and then suffered to remain, by permission of the town authorities. Such permission can give no rights on a public highway, to obstruct it, or incommode the travel thereon, and cannot restrain the proper authorities from afterwards removing them, if in their judgment it is necessary. Nor does it affect the right of the surveyors to act, that the plaintiff will be now severely incommoded and damaged by the removal of the rails, it having gained no right to obstruct the way, and having used it subject to the action of the authorities, who might at any time have ordered their removal.

One other question is raised by the plaintiff. It is contended that the surveyors did not act in good faith, but were instigated to their action by the desire to accommodate an individual rather than to remove an obstruction from the highway. This question was settled in the case of *Benjamin* v. *Wheeler*, before cited, where it was held that an act within the scope of an officer's authority does not become illegal by reason of the motive which may have influenced his mind in doing it.

The evidence, therefore, offered by the plaintiff, was not competent, the acts of the surveyors being conclusive, and the

*Bill must be dismissed, with costs.*

SEPTEMBER, 1874.

In the second case the attorney general at the relation of the defendants in the previous case has filed an information charging that the Bay State Brick Company has obstructed the highway by its tracks, and praying that it may be enjoined from so doing. This case presents the same questions arising upon the same state of facts.

We think, upon these facts, that no obstruction to the rights of the public is disclosed of such a character as to call for or require the extraordinary process of injunction; or that may not be removed or prevented by the surveyors of highways in the exercise of the powers vested in them, the extent of which has been considered at length in the previous case. The

*Information must therefore be dismissed.*