## HUGH MORRISON *vs.* LORENZO G. HOWE.
## SAME *vs.* WILLIAM H. CLEMENCE.

Middlesex. Jan. 12. — Sept. 6, 1876. COLT & ENDICOTT, JJ., absent.

Under the Gen. Sts. *c.* 44, § 8, surveyors of highways are authorized to remove a building which temporarily obstructs a highway.

The decision of highway surveyors, that a thing in the highway constitutes an obstruction, is conclusive.

In an action, against a person acting under the authority of highway surveyors, for the conversion of a building, which the plaintiff was moving through the streets of a city, and which the highway surveyors had adjudged to be an obstruction, it appeared that the building had been taken to pieces by the defendant. The jury found that this was a reasonable mode of removal under the circumstances. *Held,* that this was conclusive of the right so to remove it, whether the decision of the surveyors as to the mode of removal was conclusive or not. *Held, also,* that the plaintiff had no ground of exception to an instruction that, in determining whether the mode of removal was reasonable, the jury were to consider that the plaintiff had no right to have the building in the highway.

Evidence, that an act done by a surveyor of highways, within the scope of his lawful authority, was induced by an improper motive, is immaterial.

In an action against a person, acting under the authority of the surveyors of highways, for taking to pieces a building while in the street of a city, which the surveyors had adjudged to be an obstruction to public travel, the plaintiff put in evi

dence a license from the mayor and aldermen of the city authorizing the plaintiff to move the building through the streets. It appearing in evidence that the plain-tiff had not complied with the terms of the license, it was *held* that the license was of no avail to the plaintiff.

Two ACTIONS OF TORT for the conversion of buildings. Trial in this court, before *Wells*, J., who reported the cases for the con-sideration of the full court, in substance as follows :

On April 3, 1874, the plaintiff was the owner of certain build-ings on the land of another on Green Street and George Street, public highways in Lowell, with the right to remove them there-from. On April 17, the plaintiff filed petitions with the mayor and aldermen of Lowell, for licenses to occupy and use for the term of four days a sufficient width of certain streets in Lowell for moving the buildings from Green Street, through the public highways in Lowell, to a lot on Elm Street in that city, which the plaintiff owned. Each petition contained the following clause : " In case said license is granted, and in consideration of the same, I hereby agree with the city of Lowell, that I will keep said portion of said streets, so occupied, in a condition to the acceptance of the surveyors of highways of the city of Low-ell, and the said building shall be moved without delay." These petitions were granted "on the terms and conditions named in the petition, provided said building be placed on wheels, and drawn by oxen." On April 27, the mayor and aldermen re-voked this license, and notified the plaintiff thereof on April 28. On April 29, the surveyors of highways of Lowell, in writing, notified the plaintiff to remove his buildings from the public highways of the city forthwith, and prohibited him from using them for the occupancy or removal of the buildings, for the rea-sons assigned that they obstructed and incumbered the high-ways, and hindered, incommoded and endangered public travel; and further, that, " if, after thirty-six hours from your receipt of this notice, said buildings remain on the public highways, we shall remove them therefrom at your expense." This notice was delivered to the plaintiff on April 30, at half past eleven o'clock in the forenoon.

One of the buildings, called the " long block," was about ninety feet long, and for its removal two licenses were granted, each for a building forty-five feet long. In removing this build >

ing, the plaintiff cut the same into four pieces of about equal lengths, moved one part through the streets to the Elm Street lot, prepared the next part for removal and removed it into Green Street, and did the same with the third piece. Another building was separated from its ell, prepared for moving, and moved into George Street, and cut so as to be moved in two pieces, and the ell was prepared for moving and moved into and through George Street and into Green Street. Two licenses were taken for this building, one for removal of the main part and another for the ell. Both parts were moved into the streets more than four days before April 29. There was evidence that all these parts of buildings when moved into the streets, and until taken down by the defendants, stood so that horses and wagons could and did pass by them in the streets.

On April 30, the plaintiff, on receiving the notice from the highway surveyors, commenced moving upon rollers, and not on wheels, the second section of the long block which stood in Green Street, and, working all night, got it on to the Elm Street lot on the morning of May 1, at about eight o'clock. He came back and attached his horses to the said third section, and was proceeding to move that on rollers by means of a windlass fixed in the highway and operated by a horse attached to the lever and travelling in a circle in the highway, intending to move that in the same manner in the route designated in the license, to the Elm Street lot, when the defendant Clemence, acting as city marshal of Lowell, and also under verbal direction of the surveyors of highways, stopped the plaintiff's horses and forbade and prevented him from moving it further through the streets. The same was done with the ell and the two parts of the George Street building, and all this was done between eight o'clock in the morning and noon of May 1, and they so remained in the highway until May 2, when the surveyors of highways made the following order : " In board of surveyors of highways. Lowell, May 2, 1874. Ordered : That the city marshal take down the three buildings or portions of buildings in George and Green Streets, supposed to be owned by Hugh Morrison, and incumbering the said streets, thereby incumbering and endangering public travel, and remove the material thereon to the city yard and keep the same there at the disposal of the owners." Under

this order, the defendant Clemence, with the defendant Howe, who was superintendent of buildings, and the city men and wagons, on that day took to pieces the main part of the George Street house, as it stood in the street, and loaded the pieces into the city wagons and conveyed them to a lot of land belonging to the city, about three fourths of a mile off, and stored them, and, on May 4, did the same with the ell of that building and also the third section of the long block standing on Green Street. When Clemence so prevented the removal, the plaintiff declared that he should leave the buildings in the hands of the city or of the defendants, and should have nothing more to do with them, and did not go near the buildings again.

There was evidence that the removal of the buildings to Elm Street could have been completed at comparatively small expense if it had not been interrupted, and that when so placed upon Elm Street they would have been of much greater value than by any other disposition of them.

The plaintiff asked the judge to instruct the jury as follows : " 1. That no license from the mayor and aldermen to remove the buildings through the city was necessary, or required by law. 2. That the plaintiff was not prohibited by law from using the highways of the city of Lowell for the purpose of moving buildings, and is entitled to damages for any injury done that prop erty even though in the highway, unless such injury was authorized by law, and that there was evidence tending to show a conversion by the defendants or one of them. 3. That it should be left to the jury to determine whether the buildings or parts of buildings described, considered in reference to the time and place when and where, and the manner in which they were being moved, were suitable and proper to be moved along the highways of Lowell, established according to law for the general and common convenience of the whole community. 4. That if the jury should find they were suitable and proper, and were being removed in a reasonable manner with due diligence, the defendants would be liable for taking them to pieces and removing them to the city grounds, even though directed to do so by the surveyor of highways, and that under such circumstances the taking them to pieces would be a conversion. 5. That if the plaintiff, acting under the license in good faith and reasonable

expedition, moved his buildings into the streets, and, with due diligence, in a reasonable manner, and without unreasonable delay, was moving them towards the place designated in the license, the license was not so revoked as to deprive him of the right to move the buildings over the highway towards the place designated, although the time named for the removal had expired. 6. That it was a misuse or destruction of the buildings to take them down and destroy their character and value; or that the jury should pass on that question, and if they should find it a misuse or unreasonable and unnecessary disposition of the property, or not required by the circumstances, the defendants would be liable in trover, even though they preserved the pieces and offered to return them to the plaintiff. 7. That if the buildings were nuisances or incumbered the travel, &c., as they stood in the streets, the surveyors could only authorize their removal or remove them, and could not legally destroy them, and to take them to pieces would be a conversion, although they offered to return the pieces. 8. That the highway surveyors had no authority to take down and destroy the buildings in the streets, and could not authorize the defendants to do so, and that at most it was a question for the jury whether that was a reasonable disposition of the buildings as they stood. 9. That if the buildings were put in the streets, prepared to be moved under the license, and the time named for the removal expired while they were there, or if the license was revoked by the mayor and aldermen while they were so there, that would not deprive the plaintiff of the right to finish the removal, with due diligence, to the place designated in the license, or to remove them through the streets as best he could to preserve them as buildings, if the jury should find such removals would be reasonable and proper under all the circumstances. 10. That the defendants would have no right to destroy the buildings or take them to pieces there, even under the order of the surveyors of highways, if the jury should find that it would be reasonable and proper that they should be moved through the streets, and that they could be moved through the streets without damage to the public, and without unreasonable hindrance and delay of others in the use of the streets."

The judge declined to give any of the instructions requested, but submitted the following questions to be answered by the

jury : " 1. Was the third quarter section of the long block moved into the street on. the afternoon of Monday, April 27th, or previously? 2. Were the buildings allowed by the plaintiff to remain in the street longer than would have been necessary if he had exercised reasonable diligence in their removal? 3. Was the removal of the buildings by taking them down a reasonable mode of removal under the circumstances of the cases?" The jury returned the following answers : " 1. It was moved on Monday, April 27th. 2. They were. 3. It was."

The jury were instructed that, in answering the third question, they were to consider that the plaintiff, at the time the buildings were taken down, had no right to have them removed entire through the streets of the city to his Elm Street lot ; and the defendants were not bound to move them or cause them to be moved entire either. to Elm Street, or to a distance through any other streets of the city.

The following question was also proposed to be submitted : " Did the defendants take possession of the buildings in any manner or for any purpose other than as city marshal, for the purpose of enforcing the city ordinances, or by authority of the surveyors of highways, for the purpose of removing them as obstructions from the streets?" It was agreed that the answer to this question should be in the negative, subject to the exception of the plaintiff on account of the exclusion of evidence offered by him to show that one motive, which influenced the defendants and the surveyors of highways to induce them to prevent the removal of the buildings through the streets, was a desire to prevent buildings of that class from being erected or placed upon Elm Street.

The judge thereupon ordered verdicts for the defendants. If the plaintiff could not maintain the actions, or either of them, judgment was to be entered on the verdicts ; otherwise, new trials to be ordered, and such disposition to be made of each of the cases as the court should determine.

*D. S. Richardson*, for the plaintiff. 1. The case does not present the question of construction or repair of highways, but only the question of the manner and purpose for which the plaintiff was using the highway. Whether such manner and purpose were authorized by law was a question of fact to be determined

by the jury upon the evidence. *Gregory* v. *Adams*, 14 Gray, 242. *Graves* v. *Shattuck*, 35 N. H. 257. *Hopkins* v. *Crombie*, 4 N. H. 520, 525.

2. The surveyors of highways had no authority to pass conclusively on the question whether the buildings, in the manner they were being moved through the highways, were common nuisances, and had no authority to interfere with this use of the highway, unless the jury should find that the buildings unnecessarily obstructed the free passage of the public or endangered those rightfully using the way.

3. If the removal was authorized, the destruction was not authorized, unless the jury should find that the destruction was reasonably necessary and indispensable to the removal under all the circumstances. *Loker* v. *Brookline*, 13 Pick. 343, 349. *Mellen* v. *Western Railroad*, 4 Gray, 301. *Perry* v. *Worcester*, 6 Gray, 544.

4. Evidence was improperly excluded that one of the motives of the defendants and the surveyors was to prevent the building from being erected or placed on Elm Street. If the jury were to pass on the question of the reasonableness of " taking down the buildings " and destroying their character as buildings, and reducing them to " material," the motives inducing such action would have an important bearing, and might properly require clearer and stronger evidence in the minds of the jury to determine the reasonableness of acts done under such guidance. It is only when the act done and manner of doing are clearly authorized by law that the motive is unimportant.

5. In the third question, the jury were instructed to pass upon the reasonableness of the removal " by taking down the buildings," under the circumstances, but they were erroneously instructed also, as matter of law, that in answering the question they were to consider that the plaintiff had no right to have the buildings moved through the highways. This left nothing for the jury to pass upon on this question ; for if the buildings could not legally be moved, nothing could be done but take them down. There was evidence that the buildings could have been moved to Elm Street at small expense, and would have been of much greater value than by any other disposition. This the jury were not allowed to consider.

*A. P. Bonney,* for the defendants.

DEVENS, J.   The defendants acted under the authority of the surveyors of highways of the city of Lowell in what they did as to certain buildings standing in the streets of that city.   They have not converted them to their own use, unless they did so by taking them down and removing the materials from the streets, and they have always been ready to deliver these to the plaintiff.

It is contended that no question of the construction or repair of highways is here involved, and that only a jury can decide whether the use made by the plaintiff of the streets in moving his buildings through them was unreasonable and such as to amount to an obstruction of the ordinary course of public travel. If this were a controversy between the plaintiff and persons acting without public authority in removing these buildings as an obstruction to their own lawful use of the street, such would undoubtedly be the case; because private persons so acting take the risk of being deemed and treated as trespassers, unless they show that they are justified in what they do in the exercise of their own rights.   The cases cited by the plaintiff go no further than this.  *Hopkins* v. *Crombie,* 4 N. H. 520, 525.   *Graves* v. *Shattuck,* 35 N. H. 257.

There may be a use of a highway, so unreasonable in its character as to amount legally to an obstruction of it, even if the public travel can still be continued over it.   It is the right and duty of the surveyors to remove whatever obstructs or incumbers a highway, or hinders, incommodes or endangers those travelling thereon.   Gen. Sts. *c.* 44, § 8.   This authorizes them to remove not only a structure which permanently, but one which temporarily, obstructs the way, as it does to remove the piles of rubbish or of goods, with which it may be incumbered.   *Day* v. *Green,* 4 Cush. 433, 437.   Whether that which is found in the highway constitutes an obstruction is to be determined by them, and their decision is not liable to be afterwards revised by a jury.  *Benjamin* v. *Wheeler,* 15 Gray, 486, 491.  *Heald* v. *Lang,* 98 Mass. 581.   *Bay State Brick Co.* v. *Foster,* 115 Mass. 431. If it were otherwise, although acting as public officers, they could only so act at the risk of being afterwards treated as trespassers, and the highway would necessarily in some instances continue obstructed, while the character of that which might finally be

determined to be a nuisance was being discussed and considered by the judicial tribunals.

It is said, however, that, even if the removal of the buildings by the surveyors was authorized, they had no authority to destroy them. Without considering whether the decision of the surveyors as to the mode of removal is or is not conclusive, it is sufficient that it has been found as a fact by the jury that the taking down of the buildings was a reasonable mode of removal under the circumstances, and therefore that what they had a right to do has been properly done and with due regard to the rights of the plaintiff. Nor was it erroneous in the presiding judge to rule that, in determining whether the mode of removing the buildings adopted was reasonable, the jury were to consider that the plaintiff had no right to have them in the highway. This assumed only that the adjudication by the surveyors, that thus situated they were an obstruction to the public travel, was conclusive, and that the plaintiff could not of right demand that they should be moved entire upon his Elm Street lot or any other distance through the streets of the city.

The evidence that the motive of the surveyors, or of one of them, in making their order, was that buildings of this class should not be placed upon Elm Street, was not relevant. An act, done within the scope of a public officer's lawful authority, does not become illegal by reason of the motive which may have influenced his mind in doing it. *Benjamin* v. *Wheeler*, *ubi supra*.

It is unnecessary to consider whether the mayor and aldermen could properly issue a license for the removal of buildings through the streets of the city, which would control the surveyors in the performance of the duty imposed upon them by the general law. If such license could properly have been issued, it is clear that, to be of any avail, its conditions must be complied with. The license issued required the buildings to be "moved without delay," and it is found by the jury that they were permitted to "remain in the street longer than would have been necessary, if the plaintiff had exercised reasonable diligence in their removal." It further appears that he was engaged in moving them, and proposed to move them, in a different way from that provided by the license. The license of the plaintiff

was revoked on April 27, of which he had notice on April 28. On April 29 he was notified by the surveyors that his buildings incumbered the street and that he must remove them within thirty-six hours, and no act was done by the surveyors to interfere with his occupation of the street until May 1.

*Judgments on the verdicts.*