EDWARD E. DENNISTON *vs.* JAMES W. CLARK.

Hampshire. Sept. 20. — Nov. 4, 1876. COLT & MORTON, JJ., absent. Sept. 18, 1877. — Aug. 3, 1878. ENDICOTT & LORD, JJ., absent.

In an action of tort against a surveyor of highways for the removal, while acting within the scope of his authority, of earth and gravel from the highway in front of the plaintiff's estate for the purpose of making repairs, the surveyor's judgment as to the necessity of such repairs is conclusive, and his good faith in making them cannot be questioned, whether the repairs are made opposite such estate, or on another part of the way or on another highway within his jurisdiction; and the only remedy is under the Gen. Sts. *c.* 44, § 19.

A surveyor of highways, while acting within the scope of his authority, may remove earth and gravel from one highway or part of a highway to another within his jurisdiction.

TORT for breaking and entering the plaintiff's close, and carrying away therefrom one thousand loads of earth and stone. Writ dated September 2, 1874. Answer: 1. A general denial. 2. That the acts complained of were done by the defendant as highway surveyor in repair of the highways within his jurisdiction. Trial in the Superior Court before *Putnam*, J., who allowed a bill of exceptions in substance as follows:

The evidence tended to show that the plaintiff owned land on Prospect Hill, on the northerly side of Prospect Street, in Northampton; that against this land the highway descended the hill on a sharp grade; that in 1869 the county commissioners ordered that this highway be straightened and regraded for a distance of between one and two miles; that, after the road was so constructed and finished, it was accepted by the commissioners; that the excavations and repairs left high banks on each side of the

highway near the brow of the hill, in some places as high as ten feet on the plaintiff's side of the highway; that the material removed was composed of hardpan and gravel, well suited to the hardening of the road-bed of highways; that much the larger portion of the earth removed in constructing the highway, as ordered by the county commissioners, was used in raising the road-bed at the bottom of the hill against the lands of other owners abutting on said highway; and considerable more was used in hardening other parts of the same road, and some of it was used upon Spring Street, a half a mile or more away from the plaintiff's land.

There was also evidence tending to show that, after the road was so constructed, the high bank on the plaintiff's side of the road, which was composed of boulders, cobble-stones, gravel, and a kind of earth easily affected by frost, as the frost came out in the spring, would slough off in such quantities as to fill up the ditch along the roadside, and, in heavy rain and melting snows, would cause the water to overflow the road-bed.

The defendant testified that at the time of the alleged tort he was repairing the highway in front of the plaintiff's estate by cleaning out the gutter, which had become filled up by slides of earth from the bank, and by giving such increased width to the gutter and such slope to the bank all along down the hill as would more effectually prevent the filling up of the gutter and the consequent overflow and wash of the road-bed; that he removed the surface material derived from the cutting down of the bank to repair Elm Street and South Street, points remote from the plaintiff's land but within the limits of his jurisdiction as surveyor; that in his judgment the repairs made by him were required for the well being and best security of the road; that he made them in good faith, and that the material removed was needed at the places where used.

The plaintiff offered evidence tending to show that the defendant was not at this time making repairs on the highway in front of the plaintiff's land, but that he was there for the purpose of obtaining earth and gravel from the embankment against the plaintiff's land to use on other highways, remote from Prospect Street. The defendant objected to this evidence; but the judge admitted it.

The defendant asked the judge to instruct the jury that, even though he was not making repairs on the highway in front of the plaintiff's premises, he had the right to take such material from the embankment in question, within the limits of the high way, as he had occasion to use in repairing other highways within his jurisdiction.

The judge declined to give this instruction; but instructed the jury "that, after the original construction of the highway, as above referred to, and its acceptance by the commissioners in 1869, the town had no right to remove the soil in front of the plaintiff's premises, unless it became necessary, in the judgment of the highway surveyor, to do it for the purpose of keeping the highway in repair, and making it safe and convenient for public travel at that place; that if the defendant, in the exercise of his duty as surveyor, cut down this embankment for the purpose of repairing the road, and making it thus safe and convenient, he had the right so to do, and the right to carry away the soil which it became reasonably necessary so to remove, and to use it for the purpose of repairs upon such other of the highways belonging to the town within his precinct as needed such repairs; but that, if he was not *bonâ fide* repairing the way at this point, he had no right to take the soil merely for the purpose of making or repairing other highways; that if he was at work for the purpose for which he testified, he was repairing the highway, and his judgment was conclusive as to the time and manner of doing it, and he was not to be held responsible for any errors of judgment; but that it was for the jury to say whether such was his purpose, that his saying that such was his purpose was not conclusive upon the jury, but they had the right to say, upon all the evidence in the case, whether such was his purpose and judgment."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which were argued in 1876.

*C. Delano*, for the defendant.

*D. W. Bond & H. H. Bond*, for the plaintiff.

LORD, J. We think the case of *Benjamin* v. *Wheeler*, 8 Gray 409, decisive of this. The ruling of the presiding judge was accurate, with the exception that he permitted the jury to pass upon the question of the good faith of the surveyor in his mode

of making repairs. There seemed to be no controversy at the trial upon the question whether the defendant was a surveyor of highways; nor whether he was engaged in making repairs. And the instructions to the jury were based upon these facts; that the defendant was a surveyor of highways, and was in the execution of his official duty. Under such circumstances, neither his judgment nor his good faith can be revised by a jury. The question whether he was acting within the scope of his authority cannot be made to depend upon his state of mind.

If the presiding judge meant by his instruction to rule that an excavation in the bank could only be made for the purpose of repairing at the point where the excavation was made, the ruling is equally erroneous. When a highway is located and constructed, the entire land within its limits is appropriated to the public use, and the owner is entitled to compensation therefor in the mode provided by law. Gen. Sts. *c.* 43, §§ 14, 62. If, after such land is condemned to the public servitude, the owner of adjoining land sustains damage by reason of any act done for the purpose of repairing said highway, he is entitled to compensation in the mode provided by the statute. Gen. Sts. *c.* 44, § 19.

The case does not show, nor was there any offer to prove, that the acts done by the defendant were not within the scope of his authority as surveyor of highways; but the presiding judge allowed the jury to find that the acts done, although done while acting within the scope of his authority, were legal if done *bonâ fide*, but not legal if not done *bonâ fide*, thus making the legality of his acts depend, not upon his right to do the things done, but upon his good faith. The only questions which should have been submitted to the jury were, First, Was the defendant surveyor of highways in the town of Northampton? and, Second, Were the acts done, done by him as surveyor of highways and thus within the scope of his authority, and this irrespective of his motives or good faith? If so, the defendant cannot be held to answer to an action of tort for an injury sustained by the plaintiff, but he must seek nis remedy under the statute.

It is possible that the presiding judge, in using the words *bonâ fide*, meant only " really " or " in point of fact." So that the construction of his ruling would be, if the defendant was not really or in point of fact repairing the way at this point, he had

no right to take the soil merely for the purpose of making or repairing other highways. If such be the meaning intended, the language is inappropriate; and without deciding that, as an abstract proposition, it would be erroneous, yet it would be inapplicable to this case. It is not the province of a surveyor of highways to make ways, but to repair existing ways; nor was this defendant engaged in making a way; and what would be "other highways," in contradistinction to "this point," in a way recently relocated for a distance of between one and two miles, is not defined; and the entire instruction would leave upon the minds of the jury the conviction that they could revise the motives and good faith of the surveyor, which, under the authority of the case cited, cannot be done. See also *Morrison* v. *Howe*, 120 Mass. 565.

The language of the court in *Callender* v. *Marsh*, 1 Pick. 418, 435, is applicable to the facts of this case. "In no case can a person be liable to an action as for tort, for an act which he is authorized by law to do." If the petitioner suffered any injury by the acts of the surveyor in repairing the highway, he is entitled to compensation under the Gen. Sts. *c.* 44, § 19, but not in an action of tort. See *Burr* v. *Leicester*, 121 Mass. 241.

*Exceptions sustained.*

Upon a second trial in the Superior Court, before *Allen*, J., the evidence was substantially the same as at the first trial; and it was conceded that the defendant was a highway surveyor, and that Prospect Hill, from which he took the earth, Elm Street and South Street, where he assumed to make the repairs, were all within his jurisdiction.

The defendant contended that his own judgment, exercised at the time of the acts complained of, was conclusive on the question whether or not he was making repairs in front of the plaintiff's land, and, it being conceded that he had jurisdiction over that highway and was doing the acts imputed to him within the limits of the highway, that the acts done by him must be taken to have been repairs, and the jury would not be authorized to find the contrary; and that whether making repairs or not in front of the plaintiff's land, he had a right as surveyor to remove from within the limits of the highway opposite the plaintiff's

land whatever material was necessary and convenient for re· pairing Elm Street and South Street, at places within his juris· diction.

But the judge ruled that it was a question for the jury, whether or not the defendant, in his capacity of highway sur· veyor, was doing the acts and removing the earth on the high way opposite the plaintiff's land for the purpose of making re· pairs on that portion of the highway ; and that if he was not, but was there solely for the purpose of getting material to remove to Elm Street and South Street, for the purpose of making repairs there, he could not justify under his authority as surveyor.

The jury returned a verdict for the plaintiff ; and the defend· ant alleged exceptions, which were argued by the same counsel in 1877.

GRAY, C. J. As stated by Chief Justice Parker, in the pas· sage which is made the foundation of the learned argument for the plaintiff, " It is too clear to require any discussion, that the proprietor of land, over which a public highway has been laid, retains his right in the soil for all purposes which are consistent with the full enjoyment of the easement acquired by the public or by any corporation by authority derived constitutionally from the Legislature." *Tucker* v. *Tower*, 9 Pick. 109, 110.

The owner of the land therefore retains his title in trees, grass, growing crops, buildings and fences standing in the high· way at the time of the laying out, (unless he fails to remove them within a reasonable time after notice to do so,) as well as in any mines or quarries beneath, which are not part of the surface of the earth upon and of which the highway is made. Gen. Sts. *c.* 43, §§ 13, 39. *Goodtitle* v. *Alker*, 1 Kenyon, 427, 437 ; *S. C.* 1 Burr. 133, 143. *Adams* v. *Emerson*, 6 Pick. 57. *Commonwealth* v. *Noxon*, 121 Mass. 42. *Tucker* v. *Eldred*, 6 R. I. 404. *Overman* v. *May*, 35 Iowa, 89. The decision in *Smith* v. *Rome*, 19 Georgia, 89, cited for the plaintiff, unless it can be considered as substantially a case of a quarry, cannot be upheld. Dillon Mun. Corp. (2d ed.) § 544, note.

But it is equally clear that the grant of such an easement to the public, or to the corporation to which its rights have been delegated, authorizes the doing of any act in the highway, in· cluding the digging down or raising the soil to any extent, that

is necessary or proper to make and keep the way safe and con-
venient for the public travel.   *Callender* v. *Marsh*, 1 Pick. 418.
*Smith* v. *Washington*, 20 How. 135.   *Boston* v. *Richardson*, 13
Allen, 146, 159.   *Pontiac* v. *Carter*, 32 Mich. 164.   All acts
done for the purpose of repairing the way are of this character,
although they may require the removal of the soil from one part
of the way to another; and it is accordingly well settled that
the public in the case of a highway, or a turnpike corporation
or a railroad company in the case of a turnpike or railroad, has
the right, acting through proper officers, for the purpose of re-
pairing the same highway, turnpike or railroad, to take earth,
gravel or stones from one part and deposit them on another,
although if the officer applies them to other uses he may be-
come liable as a trespasser.

In *Adams* v. *Emerson*, for instance, in which an action was
maintained by the owner of land over which a turnpike road
had been laid out, against a servant of the corporation, for tak-
ing the herbage growing thereon, Mr. Justice Wilde, delivering
the opinion of the court, said, " The *locus in quo*, although part
of a turnpike road, is the soil and freehold of the plaintiff.   He
has the exclusive right of property in the land, subject however
to the easement or rights incident to a public highway, such as
the right of passage over it, and the right which the turnpike
corporation has to construct a convenient pathway, and to keep
it always in good repair.   To accomplish these purposes, the
corporation may dig up and remove from place to place, within
the limits laid out for the road, any earth, sand and gravel, and
may dig or cut up sods and turf."   6 Pick. 58.   See also *Phil-
lips* v. *Bowers*, 7 Gray, 21, 26; *Burr* v. *Leicester*, 121 Mass.
241; *Jackson* v. *Hathaway*, 15 Johns. 447, 453; *Fish* v. *Mayor
&c. of Rochester*, 6 Paige, 268, 272; *Bissell* v. *Collins*, 28 Mich.
277; *Baxter* v. *Winooski Turnpike*, 22 Vt. 114; *Cole* v. *Drew*,
44 Vt. 49; *Chapin* v. *Sullivan Railroad*, 39 N. H. 564; *Aldrich*
v. *Drury*, 8 R. I. 554.

In New England, at least, the same rule nas peen applied by
law and usage to the taking of materials from one highway for
the repair of another within the jurisdiction of the same munic-
ipal authorities.   *Hovey* v. *Mayo*, 43 Maine, 322.   *New Haven*
v. *Sargent*, 38 Conn. 50.   In such a case, both highways must,

for this purpose, be deemed as much parts of one plan of public improvement for the accommodation of the public travel, as if they formed parts of a continuous line of road called by one name, as in the case of a turnpike or of a railroad. In *Delphi* v. *Evans*, 36 Ind. 90, to which the plaintiff has referred us, although there are *dicta* inconsistent with this view, the decision appears to have been based upon the want of any such order of the city council as was required by statute.

The office of surveyor of highways existed in England long before the settlement of Massachusetts. The St. of 2 & 3 P. & M. *c.* 8, required surveyors to be chosen in each parish, and the parishioners to work on the highways four days in each year under their supervision. The St. of 5 Eliz. *c.* 13, recited, as a defect in the previous statute, " that such substance and matter as is most fit and convenient for the reparations of the said ways cannot be lawfully had, fetched and taken out of the several grounds and soil thereunto nigh or adjoining; " and therefore enacted that the surveyors, " for the better reparation and amendment of the ways within their several parishes and limits," might, " if it shall be to them so thought necessary," take broken stones or rubbish already dug in private quarries, and for want thereof dig gravel, sand or cinder, in the several grounds (except houses, gardens, orchards or meadows) of any person within the parish, " and nigh adjoining to the way or ways wherein such reparations shall be thought necessary to be made," and likewise " gather stones lying upon any lands or grounds within the parish, and meet to be used for such service and purpose, and thereof to take and carry away so much as by discretion of the said supervisors shall be thought necessary to be employed in the amendment of the said highways." Those statutes, with some temporary modifications, continued in force until near the time of the American Revolution, and were then superseded by other statutes containing similar provisions. Com. Dig. Chimin, C. 4. Sts. 14 Car. II. *c.* 6 ; 7 Geo. III. *c.* 42 ; 13 Geo. III. *c.* 78.

In Massachusetts, surveyors of highways were authorized to be chosen in each town by some of the earliest acts of the Colony and of the Province. Col. St. March 3, 1635–6 ; 1 Mass. Col. Rec. 172. Prov. St. 1692–3 (4 W. & M.) *c.* 28, § 4; 1

Prov. Laws (State ed.) 65.   Anc. Chart. 195, 248.   No colonial
or provincial statute specified their duties, until the highway
act of 1693–4 (5 W. & M.) *c.* 6, § 1, declared that the survey-
ors of highways in each town should "take care that all high-
ways, private ways, causeys and bridges, lying within the pre-
cincts of such town, be kept in repair, and amended from time
to time, when and so often as shall be needful;" and should be
empowered, among other things, "to dig for stone or gravel,
clay, marl, sand or earth, in any land not planted or enclosed."
1 Prov. Laws, 136; Anc. Chart. 267.

An early statute of the Commonwealth in like manner author-
ized surveyors of highways "to dig for stone, gravel, clay, marl,
sand or earth, in any land not planted or enclosed, and the ma-
terials, thus dug up, to remove to such place or places in the
highways, for the repair and amendment thereof, as they shall
determine necessary."   St. 1786, *c.* 81, § 1.   The object of this
provision, as of the corresponding ones in the statutes of Eng-
land and of the Province, manifestly was to grant the power of
taking materials for the repair of highways from private lands
not within their limits.   This is made even more clear by the
form in which it was reported by the commissioners on the Re-
vised Statutes, namely, "to dig in any adjoining land not culti-
vated or enclosed," &c.   Report of Commissioners on Rev. Sts.
*c.* 25, § 3.   It doubtless recognizes or implies, but, in strict accu-
racy and having regard to the history of the statute law upon
the subject, it cannot be asserted (as when, having no occasion
to examine this point critically, it was said in *Callender* v. *Marsh*,
1 Pick. 427) that it "gives the power to take from any hill in
the road the material necessary for filling up any part of it
which requires raising."   The omission of this provision, there-
fore, by the Legislature, in the Revised Statutes of 1836, does
not impair the authority of a surveyor of highways to remove
earth and gravel from one highway or part of a highway to an-
other within his jurisdiction, which had in all the earlier stat-
utes been assumed to be so incident to his office and duty as to
need no express affirmance or mention.

Nor is the authority of the surveyor in this respect diminished
by the Gen. Sts. *c.* 44, § 19, reënacting the Rev. Sts. *c.* 25, § 6
and providing that "when an owner of land adjoining a highway

or town way sustains damage in his property, by reason of any raising, lowering or other act, done for the purpose of repairing such way, he shall have compensation therefor," to be deter mined as therein provided. This statute does not affect the extent of the authority of the public and its officers, or the principle upon which that authority rests. It only affords additional compensation in such cases as come within it; and, whether it must be strictly limited to acts done for the purpose of repairing the particular highway or town way adjoining the land of the petitioner, or may be liberally construed as a remedial statute so as to include acts done in the way adjoining his land for the purpose of repairing a highway or town way elsewhere, it does not make any act of the town or its officers a tort which would not have been so before. *Elder* v. *Bemis*, 2 Met. 599, 604. *Brown* v. *Lowell*, 8 Met. 172, 176. *Brainard* v. *Clapp*, 10 Cush. 6, 9.

The acts of the defendant, in removing earth and gravel from a highway within the limits of his jurisdiction as a surveyor, and opposite the plaintiff's land, were apparently within the scope of the defendant's official duty; his judgment exercised at the time of doing them was conclusive upon the question whether they were necessary for the purpose of repairing the highways, either at the place from which they were taken, or at the other places within his jurisdiction where they were afterwards deposited by him; and the plaintiff had no other remedy, for any injury to his land in consequence of such acts, than under the Gen. Sts. c. 44, § 19. *Benjamin* v. *Wheeler*, 8 Gray, 409, and 15 Gray, 486. *Bay State Brick Co.* v. *Foster*, 115 Mass. 431. *Morrison* v. *Howe*, 120 Mass. 565. *Burr* v. *Leicester*, 121 Mass. 241.

To submit to a jury, in an action of tort against a surveyor, the question whether he in fact did the acts complained of for the purpose of making repairs, when those acts appear to be suitable for that purpose, is substantially equivalent to trying the questions of the necessity of the repairs and the motives and good faith of the surveyor, which, as has already been decided, at a former stage of this case, cannot be done.

For these reasons, we are all of opinion that upon both the questions raised at the trial the defendant's positions were well taken, and the instructions given to the jury were erroneous.

*Exceptions sustained.*