Parker, J.
The first point relied upon by the plaintiff is, that the selectmen, when they laid out this road, did not make any *10 estimate of the damages sustained by the plaintiff, and that in their return no notice is taken of these damages.
It is a sufficient answer to this objection, that the statute, authorizing the laying out of private ways by the selectmen, does not require damages to be estimated by them. It does provide that the party aggrieved shall be entitled to such recompense as he and the selectmen shall agree upon ; and it provides further, that, if there shall be no agreement by the parties, a jury shall be summoned by the Court of Sessions, or a committee shall be agreed on by the parties, for the purpose of ascertaining such damages.
It is true that, in the location of a public highway by a committee of the Court of Sessions, such committee are to [ * 12 ] * estimate the damages under oath, and make return thereof to the court. But there is no analogy between that case and the present; for in that case the committee are disinterested, and are supposed to be adequate and impartial judges of the damages; whereas in this case the selectmen are parties, and on that account wholly unfit to estimate the amount of damages, which would be a suitable recompense to the aggrieved party.
No sum having been proposed by either party, upon which an agreement could have been bottomed, the plaintiff should have made his application to the Court of Sessions for a jury, or should have agreed with the selectmen or the town upon a committee, and would thus have been suitably indemnified for the injury he has sustained.
The second exception to the proceedings of the selectmen and of the town is, that it appears from the record thereof, that the road so laid out and approved is a public way or highway, and not a private way, for the use of the inhabitants of the town of Cambridge only ; and therefore that the town had no authority or jurisdiction over the same; the statute relative to this subject giving the authority to lay out public ways exclusively to the Court of General Sessions of the Peace then in being, which court had the original and final jurisdiction given to them of this subject.
Upon looking into the proceedings, we find that a number of the inhabitants of Cambridge petitioned the selectmen of that town to lay out this road, stating that it would be very convenient to a great majority of the inhabitants of the town ; that the selectmen heard all persons supposed to be interested, laid out the road, and returned that they had done it for the accommodation of a large majority of the inhabitants, and for the use of the town; and the return is accepted by the town at a meeting of the inhabitants held for the purpose of considering the report of their selectmen upon this subject.
*11 But it appears also by the record, that the road so laid * out leads from one part to another of a preexisting county [ * 13 ] road, and hence the plaintiff insists that, under the name of a town way, it is, in fact, but altering and straightening a public highway, in which all the citizens of the commonwealth have as much interest as the inhabitants of the town of Cambridge; and of course it cannot have been laid out for the use of that town only.
We have given due consideration to this objection, but do not find that it has much weight. It is true that the statute, authorizing the selectmen of towns to lay out private ways, does, in terms, Confine this authority to the laying out of such ways as shall be for the use of the town to which they belong only; but it is evident that the intention of the legislature, in using these words, was only to distinguish the cases within the authority of the towns by their selectmen, from those committed to the Court of Sessions.
Whenever a road is wanted by the public from town to town, or through the county from one point to another, the jurisdiction is given to the county court, and with manifest propriety; for the conflicting interests of the several towns, through which the great country roads should pass, would prevent such a location of them as would be for the public good.
When the inhabitants of a town, or a portion of them, want a road within that town, then, as the expense is to be borne, and the advantage to be enjoyed, by the inhabitants, the power of laying it out and controlling it is given to them in the first instance, reserving the right to such individuals as may be aggrieved, to apply for a revision of the question to the Court of Sessions, who may, by a committee or jury, confirm or annul the doings of the town.
Nor is it any objection to the exercise of the authority by the town, that the road to be laid out by them will be as much used by the inhabitants of other places, or by strangers who may have occasion to pass it, as by those for whose use it was declared to be established. For the real utility of a road to any town may consist less in the actual * passing and repassing through [ * 14 ] it by the inhabitants of the town, than in facilitating the intercourse of strangers or inhabitants of other towns with them. Thus, suppose the great highway from the country to the metropolis should pass through the skirts of a town, the inhabitants of which are principally settled in a compact state in the centre ; it is obvious that a village so situated would offer little inducement to the farmer and others travelling to market, to turn out of their way for the ac commodation of its inhabitants. And it is equally obvious that a road so laid out, as to facilitate the access of people from the country with their produce to such a village, would be of great convenience *12 and utility to its inhabitants, although few of them might themselves have occasion to pass and repass such a road. And we do not see why a road established for such purposes by the inhabitants of any town is not authorized by law, it being manifestly for their benefit, and perhaps of no importance to the public.
But there is another answer to the objection made by the plaintiff, which is, that the statute has given to the town the right of judging whether any proposed road be for its convenience or not; and that the decision of the town upon the question regularly submitted to it is final, unless, within the time limited by the statute, there has been an application to the Court of Sessions, and the doings of the town have been overruled.
We cannot, in this incidental way, in opposition to the voice of the inhabitants of a town, declare a road not to be for their convenience, when by the record the very contrary appears. And we are further satisfied with this answer to the objection, on considering that the town may entertain an application for the discontinuance of a road found to be inconvenient, and, whenever a majority of the inhabitants see fit, may discontinue it; a right of control being placed in the Court of Sessions, upon application by any person aggrieved by such discontinuance.
[ * 15 ] *It has been argued that towns, under color of establishing roads for their own convenience, may, in fact, assume to themselves the power of determining the public highways, which by the legislature has been committed to the Court of Sessions.
But there is little danger of towns burdening themselves with the expense of making, and of keeping in repair, more roads than are convenient to the inhabitants; and if they should, the Court of Sessions will always take care, upon application, to appoint a committee or summon a jury, who will discontinue any road found to be established by imposition, or even through misapprehension of the true interests of any town in which it has been laid out.
Another objection is, that, admitting the location of the road to be correct, and the subsequent approbation by the town regular, yet that the defendants had no right to enter upon and make the road at the time complained of, because the statute allows a year for the aggrieved party to apply to the Court of Sessions for a jury ; and that until that time had elapsed, the way could not be considered as established, it being liable to be discontinued on such application.
But we find nothing in the statute to support the objection ; and however just and convenient such a provision might be, we have not the power to create restrictions where the law is silent about *13 them. The words of the statute are, “ that no private way thus laid out shall be established as such, until the same has been reported to the town, at some public meeting of the inhabitants thereof regularly notified and warned, and by them approved and allowed.” — Now, it would seem to be an irresistible implication, that when these proceedings have taken place, which are thus prescribed by law, and the town has approved, the road as laid out by the selectmen is established. If so, the surveyors, or selectmen acting as such, cannot be trespassers in making such road passable, although the year, during which an application quasi an appeal may be made, has not elapsed.
*That this is the true construction of the statute, may [ * 16 ] be further gathered from subsequent legislative provisions, where care is taken to prevent any act upon the ground laid out as a road, in consequence of such laying out, for a reasonable time. Thus, in the statute of 1796, c. 58, § 6, it is provided that a reasonable time shall be allowed for any town, district, or plantation, through which a public highway shall have been laid out and approved, to make the same passable, safe, and convenient. This is an indulgence to the corporations, who are obliged to maintain the -oads. — And in the statute 1802, c. 135, § 4, time is given to the owner of lands, when a committee or jury shall assess damages occasioned by the laying out of such road, to take off the wood, timber, or trees standing thereon ; and even in this case the surveyor may enter, and fell the trees, and make the road ; and the only right reserved to the owner is that of carrying oft’ the wood or limber.
If it should appear in any case, when a road is laid out by the selectmen through the ground of any person, that he notified them, or the town, before the road should be begun to be made, that he intended to make application to the court having jurisdiction of the subject, and to pray for a discontinuance of the road, and he should immediately make such application, and pending the same, the sur veyor should enter, and begin to make the road, we are not prepared to say that, upon application to this Court, some process would not issue to stay the proceedings of the surveyor until the question should be decided. But that not being done in the present case, we cannot consider the defendants as trespassers for executing the orders of the town, in making the road, which had been duly established, notwithstanding the party now complaining had at the time a right to apply to the Court for a discontinuance of the road.
And we are confident that the general usage in the commonwealth has been to proceed in making a road, which has been *14 [ * 17 ] thus laid out and approved, during the year, in * which the right of application for a discontinuance existed. — Whether, if a committee or jury should in fact discontinue the road after it had been made, the aggrieved party would not have a remedy against the town, or its servants, for the expense of restoring the land to its former state, and the intermediate injury sustained, need not be decided in this action.
The last objection we are called upon to attend to is, that the meeting of the inhabitants, at which the vote was passed, approving the doings of the selectmen and establishing the road, was not duly warned or regularly held ; —because it is alleged that the meeting was called for two distinct purposes by the same warrant, and that the qualifications of the voters upon the two subjects were different; so that it cannot now be ascertained that some persons, who were not qualified to act generally in town affairs, did not in fact vote in the acceptance of this road.
The facts, as they appear by the copy of the record of the proceedings of the town in the case, are that, on the 18th of April, 1808, a warrant was issued by the selectmen to the constables of the town, to notify and warn all the male inhabitants of the town, being twenty-one years of age, and residents in the town for the space of one year next preceding, having a freehold estate within the town of the annual income of three pounds, or any estate of the value of sixty pounds; also all persons qualified to vote in town affairs, to meet on the second day of May for the purpose of choosing their representatives ; and in the second article to hear and act upon the report of the selectmen on the petition of El bridge Gerry and others for the road in question.
It appears that the meeting was opened by the selectmen, and that they presided until the town had acted on the first article; and then that the town proceeded to the choice of a moderator, and passed upon the second article, and upon the other business for which the meeting was called ; so that two distinct meet- [ * 18 ] ings were in fact held, and * a distinct record was kept of each. And it also appears by the certificate of the town clerk in the case, that upon examining the records of the town for fifty years past, it appears, with one or two exceptions, that all the meetings, although several in their nature, if held on the same day, have been called by one and the same warrant.
It has not been shown that, in the meeting for the approbation of the road, any persons voted who were not qualified ; and it ought to be presumed, nothing to the contrary appearing, that the different classes of voters knew their own privileges, and that under the control of the moderator, whose duty it was to refuse ille *15 gal votes, and the inspection of other officers of the town, the meeting was fairly conducted, and that no unqualified person did in fact interfere. Therefore, although we are satisfied that it would conduce more to the order and regularity of town meetings, and the distinctness of records, that a warrant should issue for each distinct meeting, yet we do not think ourselves at liberty to disturb an error of so long standing, when no practical mischief appears to have resulted from it.
Ward and Bigelow for the plaintiff.
G. Blake and Jackson for the defendants.
We are therefore of opinion, that no sufficient objection has been shown to the justification set forth by the defendants in their brief statement, and that judgment ought to be entered for them upon the verdict.