STEPHEN A. BEMIS & another, executors, *vs.* CITY OF SPRING-
FIELD.

AMAZIAH MAYO *vs.* SAME.

ANN HINES *vs.* SAME.

HENRY W. PHELPS *vs.* SAME.

CATHARINE MORRISSEY *vs.* SAME.

MARY Y. MATTOON & another *vs.* SAME.

AMAZIAH MAYO & another *vs.* SAME.

Hampden.　Sept. 26, 1876. — March 7, 1877.　COLT & MORTON, JJ.,
absent.

Under the Gen. Sts. *c.* 43, and the amendments thereto or substitutes therefor, a pe-
tition for a jury to assess damages occasioned by an alteration in the grade of a
highway, made pursuant to the order of a city council, having authority so to do,
may be maintained.

At the trial before a sheriff's jury to assess damages occasioned by a change of grade
in L. Street, the petitioner, whose land was at the corner of L. Street and C.
Street, was allowed to ask a witness, " Irrespective of receiving any damages for
the cutting down of C. Street, what was the damage to the petitioner's lot by the
cutting down of L. Street?" To which the witness replied, a certain sum " per
foot on L. Street." Another witness was asked, "How much would it cost to
erect a protecting wall on L. Street?" And another witness, who testified that,
" assuming C. Street to have been cut down, the cutting down of L. Street was a
benefit to the petitioner," was asked, on cross-examination, " Supposing C. Street
had not been cut down, what would have been the effect on the petitioner's estate
of the cutting down of L. Street to its present grade?" to which he replied, "A
great injury to it." *Held,* that the respondent had no ground of exception.

At the trial before a sheriff's jury to assess damages occasioned by a change of grade
in a highway, evidence of the amount of damages paid to the petitioner because
of a change of grade in another highway, on which it also abutted, is inadmissible,
and is not made competent by the fact that, previously to its offer, several wit-
nesses testified that they were unable to seperate in their minds the damage done
by cutting down one street from that done by cutting down the other.

At the trial before a sheriff's jury to assess damages occasioned by a change of grade
in a highway, where it appears that a portion of the petitioner's land had been
taken by a railroad corporation, it is erroneous to instruct the jury that the only
effect of the location of the railroad thereon was to give the railroad corporation a
right to take and use the lands for railroad purposes within the limits of its loca-
tion, by paying damages therefor, without also instructing them that the petitioner
had a right to damages for what was taken by the location as soon as it was made.

SEVEN PETITIONS to the county commissioners for a jury to
assess damages occasioned by a change of grade in Lyman Street,
in Springfield.

The petition of Mayo, to which the others were substantially similar, alleged that "the city council of said Springfield, by an order passed on the twenty-fourth day of August, in the year eighteen hundred and seventy-four, caused the grade of Lyman Street, in said city of Springfield, to be changed," and "that by the alteration of said Lyman Street, his said real estate had been greatly damaged and the value thereof depreciated; that the city council had awarded him as damages therefor only $375, which said sum is entirely insufficient."

The petitions were tried together before a sheriff's jury. The petitioners put in evidence a certified copy of the petition and proceedings of the city council of Springfield, by which it appeared that certain persons made a petition, dated August 1, 1874, to the city council, "that such change or changes may be made in the grade of Lyman Street, between Dwight Street and Spring Street, as common convenience and necessity may require; also that suitable sidewalks may be ordered to be built on both sides of said portion of said Lyman Street;" that said petition was referred to the board of public works, which, after due notice to the abutters and others interested in said petition, and hearing had thereon, reported that "they are of opinion that common convenience and necessity require that the grade of said Lyman Street, between Dwight Street and Spring Street, should be changed," according to a certain grade, specified in their report; also an estimate of the probable expense of fitting the same for travel, including gutters and macadamizing; and also an estimate of damages sustained, by persons and corporations, by reason of such proposed change, according to the provisions of the ordinances of said city, and after due notice of a hearing for such purpose; and that said report was accepted and adopted by the common council, in concurrence with the board of aldermen of said city, on August 24, 1874.

It was in evidence that the premises of Phelps, of Mayo and another, and two separate lots owned by Mayo alone, were situated on the northerly side of Lyman Street; the premises of Mattoon and another, on the northerly side thereof, on the corner of Chestnut Street; the premises of Stephen A. Bemis and another, executors, on the southerly side of Lyman Street, and on the corner of Chestnut Street; one lot owned by Mayo, and

the premises of Hines and of Morrissey on the southerly side of Lyman Street.

There was evidence tending to show that the alterations made in Lyman Street were a lowering of the street at its intersection with Chestnut Street, at a point between Dwight Street and Spring Street, of about eight feet, and a raising at the easterly end, at Spring Street, of about five feet; the new grade being uniform, and crossing the old grade about midway between Chestnut Street and Spring Street. It was admitted by both parties that Chestnut Street, prior to the passage of the order for an alteration in the grade of Lyman Street, had been lowered by the city at the point of its intersection with Lyman Street to the same level with the new grade of Lyman Street.

The petitioners called William Mattoon as a witness, of whom they asked this question, which was permitted to be put and answered, under the objection of the respondent: "Irrespective of receiving any damages for the cutting down of Chestnut Street, what was the damage to the lots of Mattoon and another and of Bemis, by the cutting down of Lyman Street?" The witness replied, "Sixty dollars per front foot on Lyman Street to the lot of Mattoon and another, and fifty to sixty dollars per front foot on Lyman Street to the Bemis lot."

The petitioners also called A. L. Chapin as a witness, and asked him this question: "How much would it cost to erect a protecting wall on the Bemis property on Lyman Street?" The respondent objected, but the presiding officer permitted the witness to answer, and he replied, "Five thousand dollars."

The respondent called William H. Parsons as a witness, who testified in chief that, "assuming Chestnut Street to have been cut down, the cutting down of Lyman Street benefited the petitioners." The petitioners, on cross-examination, asked this witness, under objection, "Supposing Chestnut Street had not been cut down, what would have been the effect on the Bemis estate of cutting down Lyman Street to its present grade?" The witness replied, "A great injury to it."

The respondent also put in evidence the location of the "Springfield, Athol and Northeastern Railroad," which had been duly filed on March 20, 1874, and called George A. Ellis as a witness, who testified said location took a strip forty feet in

width along the northerly end of the lots of Mattoon and another, Phelps, Mayo, and Mayo and another, lying on the northerly side of Lyman Street, as described in the warrant to the sheriff, and contended that those petitioners were not entitled to any damages for any injury caused to that portion of said lots covered by this location. The petitioners put this question, on cross-examination, to Ellis, "Has the Springfield, Athol and Northeastern Railroad Company ever occupied under this location?" The witness replied, under objection, "No."

The respondent's counsel offered in evidence the assessment of damages in favor of Mattoon and another and Bemis against the city of Springfield for the injury caused to their respective estates on the corner of Lyman Street and Chestnut Street by the lowering of Chestnut Street, and that the judgment had been paid. The petitioners objected to its competency, and the presiding officer excluded the evidence. Previously to the offer of this evidence by the respondent, several witnesses for the petitioners, who testified in chief that the damage to the estates of Bemis and another, and of Mattoon and another, by the cutting down of Lyman Street was fifty per cent. of the value of the property, on cross-examination testified that the estimate included the injury by the cutting down of both Chestnut Street and Lyman Street, and that it was impossible for them to separate in their minds the damage done by cutting down one street from that done by cutting down the other. When the respondent offered this evidence, no suggestion was made that it was in reply to the foregoing testimony, last stated above, of the witnesses for the petitioners. The jury were repeatedly told by the presiding officer, during the trial, that they were to consider no evidence except such as applied to the cutting down of Lyman Street alone.

The respondent requested the following instructions to the jury: "1. The petitions are not under the Gen. Sts. *c.* 44, § 19, and cannot be maintained as petitions under that section, because they do not contain the allegations necessary under that section. 2. Neither of the petitions can be maintained under the Gen. Sts. *c.* 43, or amendments thereto or substitutes therefor; and no damages can be recovered on either of said petitions under said chapter, its amendments or substitutes. 3. If Lyman

Street, after the grading to the grade of Chestnut Street, was by reason of such grading a more desirable avenue for the lots to front upon than it was before it was so graded, the benefit resulting from this is to be deducted from any damages sustained by the change." The presiding officer declined to give the first and second, but gave the third request.

At the request of the petitioners, the presiding officer gave the following instructions to the jury, which were excepted to by the respondent : " 1. The petitions can be maintained under one or the other of chapters 43 and 44 of the Gen. Sts., and the amendments thereto or substitutes therefor, and for the purposes of this trial it is immaterial to the jury which, as the same rule of damages applies to each.

" 2. If the jury find that the petitioners, or either of them, suffered damage as alleged in said petitions, they are to assess such damages ; and if they find any benefits were received by the petitioners, they cannot deduct from such damages the benefits which come from sharing in the common advantages and conveniences of increased public facilities, and the general advance in real estate by reason thereof, but are to deduct any direct and special benefits to the lots of the petitioners, if any arose, such as more convenient access to the particular lots in question.

" 3. If Chestnut Street was lowered to such an extent, before the lowering of Lyman Street, that it thereby became a necessity to lower Lyman Street, in order that Lyman Street might be used, and the parties living on Lyman Street have an outlet, and the estates of the petitioners were damaged by reason of the lowering of Lyman Street to meet this necessity, the petitioners are entitled to recover damages, although it was better for them to have Lyman Street lowered than left without connection with Chestnut Street, if Chestnut Street and Lyman Street were public roads and enjoyed by the whole public, and if the only way in which the lowering of Lyman Street benefited the petitioners was in sharing in the common advantage of increased public facilities and the general advance in value of real estate in the vicinity by reason thereof.

" 4. The depreciation in market value is one element in determining the question of damages, but not the only criterion of

damage.    The real question is, what is the actual amount of damage caused to the petitioners by the change of grade ?

" 5. The inconvenience occasioned to the owner, the privation or diminution of his means of enjoying his property by reason of the changes made by the city, are elements of damage to be considered.

" 6. The only effect of the location of the Springfield, Athol and Northeastern Railroad upon the lands of the petitioners was to give the railroad corporation a right to take and use the lands for railroad purposes within the limits of its location, by paying damages therefor, and it cannot use or occupy the lands for any other purpose.   Until the lands are occupied by the railroad corporation for that purpose, the petitioners may use them as they see fit ; and, if the corporation should commence such a use and afterwards abandon it, the lands would revert again to the petitioners."

The presiding officer further instructed the jury that they should only consider the damages, if any, done to the respective estates of the petitioners by the alterations in the grade of Lyman Street, and should not take into account any damages caused by the lowering of Chestnut Street, and that they should consider all the damages caused thereby to the estates of Mattoon and another and Bemis to have been assessed and fully paid.

The jury returned a verdict for the petitioners, assessing a separate amount to each petitioner.   In the Superior Court the verdict was accepted ; and the respondent appealed.

*A. L. Soule,* for the respondent.

*H. Morris & M. P. Knowlton,* for the petitioners.

DEVENS, J.    The certificate of the presiding officer at the trial before the sheriff's jury brings before us the objections and exceptions to his rulings in seven distinct cases, tried together. While all are not applicable to each case, they may without difficulty be here discussed.

1. The respondent objects to the ruling that " the petitions can be maintained under one or the other of chapters 43 and 44 of the Gen. Sts., and the amendments thereto or substitutes therefor."

The local legislation in relation to the powers of the city council of Springfield as to highways, whether such legislation

was previous or subsequent to the enactment of the Gen. Sts., is to be considered in connection with this ruling. By the St. of 1852, c. 94, § 14, the city council of Springfield has exclusive authority "to lay out, alter or discontinue any street or way, the termini of which are entirely within the city, and concurrent power with the county commissioners to lay out any other high·· way in the city," &c. The power thus granted is similar to that given by the Gen. Sts. c. 43, to the county commissioners in laying out, altering or discontinuing highways. For certain sections of this chapter, the St. of 1870, c. 75, is now a substitute. The petitions here set forth an order of the city council changing the grade of Lyman Street; and the question is presented, whether an alteration in the grade of a way is such an alteration as, under these statutes, entitles a person, dissatisfied with the estimate of his damages, to apply for a jury. It does not appear by the petitions, or otherwise, that this alteration was one made for the purpose of repairing the way. On the contrary, it is conceded by the respondent, in contending that these petitions cannot be maintained under the Gen. Sts. c. 44, that this alteration in grade was a radical change in the way, not made for the purpose of better adapting it to the uses for which it had been before intended, but to new uses ; that it was a permanent improvement, and not in any proper sense a repair. An alteration of such a character is one not to be made by a highway surveyor in the ordinary performance of his duties, but by county commissioners or municipal governments, under the larger powers which they possess. It is a substitution of one way for another, and the power to alter a way includes the right to make such an alteration, as well as the right merely to alter the course of the way.

In *Bennett* v. *Worcester*, 4 Gray, 359, while the point is not discussed nor decided, an alteration in the grade of a way is treated, in the opinion of Chief Justice Shaw, as an alteration of a way, such as that for which damages are provided by the Rev. Sts. c. 24, § 68.

That it was contemplated by the Legislature that the power to change the grade of a street had been given by the Gen. Sts. c. 43, and also that the city council of Springfield possessed this power, are sufficiently shown by the St. of 1872, c. 334, § 4, by

the St. 1873, *c.* 126, § 6, and by the St. 1874, *c.* 275, all of which were previous to the order in this case. See also *Powers* v. *City Council of Springfield*, 116 Mass. 34, 87.

As it is not disputed that the rule of damages is the same under the Gen. Sts. *c.* 43, or amendments thereto or substitutes therefor, as under *c.* 44, we have no occasion to consider whether these petitions could also have been maintained under the latter chapter.

2. The question put at the trial to Mattoon does not fairly admit of the interpretation that the respondent would give to it. It was not an inquiry, what was the damage to those estates abutting on Chestnut Street or Lyman Street, if the whole damage from cutting down both streets was included; but called the attention of the witness to the damage proceeding from the cutting down of Lyman Street, irrespective of any which the estates might have sustained from the cutting down of Chestnut Street. That it was thus understood by the witness appears by his reply, which limits his estimate of damages to the front upon Lyman Street.

3. The question, "how much it would cost to erect a protecting wall on the Bemis property on Lyman Street," is not shown to have been incompetent. While the damages to a petitioner are not to be measured by the cost of the improvements or changes which he may think desirable in order to adapt his estate to the new condition of the street, yet, in connection with evidence that such a wall was necessary, or that it was a reasonable and economical mode of obviating the difficulty occasioned by the change of grade, such evidence might be competent, and it does not appear by the exception but that it was introduced in such connection.

4. The question addressed to the witness Parsons on cross-examination was properly allowed. It tested the judgment of the witness, and it directly tended to show that the cutting down of Lyman Street, independently of the fact that Chestnut Street was cut down, was an injury to the estates of some of the petitioners.

5. The evidence as to the amount of damages which had been assessed in favor of and paid to Mattoon and another and Bemis by reason of the cutting down of Chestnut Street, was also rightly

rejected. It had no bearing upon the question, what was the damage sustained by the cutting down of Lyman Street, which was a distinct inquiry; and it was not rendered competent by reason that, previously to the offer of it, certain witnesses had testified on cross-examination that they were unable " to separate in their minds the damage done by cutting down one street from that done by cutting down the other." It had no tendency to prove what, in their judgment, should be deducted from the estimate of the whole damages as made, by them, to show what other persons had estimated the damages which should be assigned to the cutting down of Chestnut Street.

6. The respondent objects to the sixth instruction, which has in reference alone to the petitions of Mattoon and another, of Phelps, of Mayo, and of Mayo and another. By it the jury were informed that " the only effect " of the location of the Springfield, Athol and Northeastern Railroad upon the lands of the petitioners was to give the railroad corporation a right to take and use the lands for railroad purposes within the limits of its location, paying damages therefor. But the location had the additional effect to give the petitioners, as soon as it was made and of the date when it was made, a right to damages for that which was taken by the location. Gen. Sts. c. 63, §§ 21, 22. *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574. That for which the petitioners would be entitled to claim damages was, although technically an easement, a right thus acquired by the corporation to a use of the land, permanent in its nature and practically exclusive.

The omission to inform the jury of this effect was not unimportant. The location of the railroad was filed on March 20, 1874, and the order to change the grade of Lyman Street, by which the petitioners alleged that their land was injured, was passed on August 24, 1874. When the damages of the petitioners as against the railroad corporation were assessed, the value of the property, in which it acquired an easement, would be estimated, unaffected by any injury from the cutting down of Lyman Street. How much would have been deemed by the jury in such a case the value of the fee which would have been left to the petitioners, when their estates were subjected to this servitude, we cannot determine. It may well have been merely

nominal. If so, they would assess to the petitioners for the easements taken substantially the full value of their lands. Should the petitioners receive this, they would receive the value of their lands unaffected by any injury occasioned by the grading of Lyman Street; and might also recover under this instruction compensation for that injury. The jury should have been informed that the location filed operated to give these petitioners this claim against the railroad corporation, and that they should assess the injury to them so far as these portions of their estates were concerned in view of that fact, even if it were also true that the petitioners were still entitled to damages for injury to the portions covered by the location.

As to those petitions which would be affected by the ruling which we deem erroneous the verdict should be set aside, while as to the others it should be accepted. Nor is there any difficulty in doing this, although the verdict as to all is upon a single paper; it is distinct and separable as to each petitioner. The petitioner Mayo owned lands which would, and others which would not, have been affected by this ruling; but as the verdict for him was in a single sum, it must be set aside, as it cannot be ascertained to how great an extent it was influenced by the ruling thus made.

The result is, that as to the petitions of Mattoon and another, of Phelps, of Mayo, and of Mayo and another, the verdicts are set aside; as to those of Bemis and another, executors, of Hines and of Morrissey, the verdicts are accepted.

*Judgments accordingly.*