GEORGE F. PROCTOR & others *vs.* JONATHAN STONE & others.

Suffolk. January 10, 1893. — April 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Repair of Highway — Raising of Grade — Damage to Abutter — Liability of Agents of Town.*

Persons employed by a town to make repairs in a highway which involve a change in its grade are not liable to an owner of abutting land damaged thereby, provided they act within the scope of their authority under a vote of the town, and the town itself has power to make such repairs.

TORT, to recover damages for injuries alleged to have been caused to land of the plaintiffs by the defendants in raising the grade of a public highway in the town of Revere. The case was submitted to the Superior Court, and, after judgment for the defendants, to this court, on appeal, upon agreed facts, in substance as follows. The defendants justified their acts on the ground that whatever they did was done by them in behalf and as the agents of the town, thereunto duly authorized.

On November 13, 1888, at a town meeting of the town of Revere, the defendants, Jonathan Stone, William H. Derby, and Seth Weston, were appointed a committee " to consider the matter of paving a portion of Broadway on the southeast side, from where the paving now ends to the car stable, provided the Lynn and Boston Horse Railroad Company will put their tracks in the centre of the street and pave between said tracks "; and also " to estimate the cost of edgestones, gradings, etc., and report at the March meeting."

At a meeting of the selectmen of said town, held on February 23, 1889, on the petition of the Lynn and Boston Railroad Company, for a relocation of their tracks on said portion of said Broadway and elsewhere, the selectmen voted to grant such relocation, " beginning at Beach Street and extending their double track through Broadway and the centre of the street to Central Avenue, laying tracks down to present grade of street to a little below Pleasant Street, then gradually coming up till the track will be about eight inches above present grade, making it a proper grade, more or less, as it may require upon survey. . . . The railroad company to pave from fourteen to eighteen inches outside their track, on the northwest side of their track, and between the two tracks." The land of the plaintiffs on account of which they claimed damages is on the southeast side of that part of Broadway where the tracks were required to be raised about eight inches above the then existing grade.

At the meeting of said town, held March 4, 1889, the committee above named made their report as directed. The report stated that " the Lynn and Boston Horse Railroad Company, having asked for and been granted a location in the centre of Broadway, . . . with two tracks in the centre of the street, they to pave all between their tracks and the usual width outside

their tracks on the northwest side," the committee had estimated the cost of the labor and materials required for the proposed work, and recommended that it be done. The report also stated in some detail the figures on which the committee based their estimate of the cost. Thereupon, the town voted, under a proper article in the warrant by which the meeting. had been called, to accept the report of the so called paving committee, to raise the amount of money necessary to defray the estimated cost, partly by taxation and partly by loan, and " that the same committee do the paving work."

The railroad company proceeded to construct its tracks in conformity with the vote of the selectmen granting it a relocation, and after they were thus constructed the defendants, ' acting as the committee of the town under the vote above referred to, caused the street to be paved and repaired in the following manner: the grade of the paving was made to conform to that of the railroad tracks, — that is to say, the edgestone in front of the plaintiffs' land, on the southeast side of the way, was placed with its top on a level with the car tracks, and the paving was made to slope gradually from the level of the tracks in the middle of the street down towards the edgestone at the side, so that where it came in contact with the edgestone, in the gutter, it was six inches below the level of the tracks and an equal distance below the top of the edgestone. This was the proper and usual way to pave and repair the street under the circumstances above described, because in order to pave a street so that it shall be safe and convenient for public travel it is necessary that the paving shall be laid with but a slight slope from the middle or highest part of the street towards the sides. And therefore, in paving and repairing Broadway, in accordance with the vote of the town, it became necessary to raise the grade of the street on the southeast side, where the plaintiffs' land was situated. This was done, the grade being raised, at different points on the plaintiffs' line, four and a half, six and seven eighths, seven and three eighths, and eight and five eighths inches respectively, the average amount which the grade was raised being a little over six and one fourth inches. On the northwest side of the tracks in front of the plaintiffs' premises, the grade of the way was raised without paving, the average

amount being a little less than ten inches. But on that side of the tracks some of the work of repairing the roadway was done by the defendants and some by the surveyor of highways, who also did the repairing and raising of the sidewalk on that side. The defendants made the repairs which they are stated to have made in good faith, believing they had ample authority. The repairs made were a public benefit, and the defendants received no compensation for their services.

*W. F. Kimball*, for the plaintiffs.

*S. Z. Bowman & H. W. B. Cotton*, for the defendants.

BARKER, J. The plaintiffs seek damages because the defendants have raised the surface of the street upon which their lands abut. The defendants justify as agents of the town, which is empowered by the Pub. Sts. c. 52, § 13, to intrust to committees the making or repair of roads, and if the defendants have done only what the town commissioned them to do they are not liable to the plaintiffs, unless the town itself was not justified in raising the surface of the street.

It was originally held that all damages occasioned by a change in the grade of a way were fully paid and satisfied at the time of its location. *Callender* v. *Marsh*, 1 Pick. 418. But now, owing to alterations made by statute, if any change of grade made either by the adjudication of a tribunal authorized to alter the way or to order specific repairs, or occasioned by work done in making or keeping it safe and convenient for travel, does damage to land situated on the way, the owner may have compensation. Pub. Sts. c. 49, §§ 14-16, 65, 68, 73, 79, 84-87; c. 52, §§ 15, 16. *Burr* v. *Leicester*, 121 Mass. 241. *Bemis* v. *Springfield*, 122 Mass. 110. *Sisson* v. *New Bedford*, 137 Mass. 255. *Sullivan* v. *Fall River*, 144 Mass. 579.

Changes of grade are of two general classes: one where a grade other than that which has before existed is prescribed by boards or officers who have jurisdiction to order alterations or specific repairs; the other where the change occurs, without an adjudication, in so repairing the way as to make or keep it safe and convenient, and to better adapt it for uses for which it had before been intended. The former is not in a strict sense a repair, but a permanent change or alteration, as when a road is lowered or raised to pass under or over a railroad, and is

really a substitution of one way for another, although both are within the same location. As held in *Bemis* v. *Springfield*, 122 Mass. 116, such radical changes are not to be made in the discharge of their ordinary duties by highway surveyors, or other officials or agents charged merely with keeping roads in repair, but are ordered by county commissioners or municipal governments under statute powers which are exercised in formal proceedings prescribed by the statutes. In the case of county ways this jurisdiction is in the county commissioners, under the Pub. Sts. c. 49, §§ 1–12, although in cities concurrent jurisdiction is usually given to city governments. In the cases of town ways and of private ways authority to institute such proceedings is given by the Pub. Sts. c. 49, § 65, to selectmen and road commissioners. Neither the statutes nor the decisions have attempted to draw the line between changes of grade which are such radical alterations as to require an adjudication, and those which may properly be made in the prosecution of the work of ordinary repair. It is usually of no importance to have a line of distinction established; for in either case, if the change causes damage to lands situated on the way, a remedy is given in the one case by an assessment by the tribunal which orders the change, Pub. Sts. c. 49, §§ 14, 15, 68, and in the other by petition of the party aggrieved, brought within one year after the completion of the work. Pub. Sts. c. 52, § 15. If the plaintiffs here had prosecuted their statute remedy, their right to recover in one or the other of these modes, if their land was in fact damaged, would have been clear. But as they have seen fit to sue the individuals who did the work, they must show that the acts which have damaged their land were beyond the authority given by the town, or that the town itself acted without right.

The statement of facts shows that when the defendants began work there were two street railway tracks in the centre of the street, with the space between them and for some inches on one side paved and raised about eight inches above the rest of the street, which was unpaved. In this condition the way was not safe and convenient for travel, since vehicles could not cross it without danger, and yet this was precisely the condition in which the town, when it directed the defendants to do the paving, anticipated that the street would be. It was necessary to

repair it to fit it for travel, and the facts state that the committee repaired it in a manner proper and usual under such circumstances, and in so doing they did only what they were expected and directed by the town to do. But as the agreed facts state that the street was a public highway, and show no adjudication or order for such a change of grade as is contemplated by the statutes authorizing county commissioners or municipal governments to alter ways, or to order specific repairs, unless the changes made by the defendants were repairs which may be made without such an adjudication they were not within the power of the town to vote. It is not stated that the grade of the way had been previously fixed by any tribunal, and this is not to be inferred. In the absence of an established grade, the town by its highway surveyors, or by any agents whom it saw fit to employ, could make such reasonable changes in the surface of the street as were necessary to make it safe and convenient for the usual travel. It was within its power so to repair the street as to adapt it to the uses for which it·had before been intended. The granting of the relocation to the street railway company seems to have been within the power of the selectmen. The width of the street is not given, but before the relocation there were two street railway tracks, which were so relocated as to occupy its centre. It cannot be said, as matter of law, that a relocation which directed these tracks when changed to the centre of the street to be raised eight or ten inches above their former grade was in excess of the power conferred by the Pub. Sts. c. 113, § 22, authorizing selectmen to alter the location and position of such tracks. Roads are often crowned to that height.

In our opinion, the whole change was not such a radical alteration of the way as to be beyond the limit of proper repairs. The street had before been used both for ordinary travel and for street cars, and it is agreed that the changes were a public benefit. If they in any way injured the plaintiffs' land, they had a remedy by petition to the selectmen, under the Pub. Sts. c. 52, § 15, and we see no reason why they should be allowed to recover of the defendants, who were servants of the town acting within the scope of their authority in making repairs which the town had power to make. See *Kennison* v. *Beverly,*

146 Mass. 467, 469. *Allen* v. *Gardner*, 147 Mass. 452. *White* v. *Foxborough*, 151 Mass. 28, 42. *Collins* v. *Waltham*, 151 Mass. 196. *Woodbury* v. *Beverly*, 153 Mass. 245.

*Judgment affirmed.*