ELLEN McMANUS *vs.* INHABITANTS OF WESTON.

PATRICK McMANUS *vs.* SAME.

Middlesex.    January 25, 1895. — September 9, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Road Commissioners as Public Officers — Liability of Town — Statute.*

An action of tort was brought against a town for personal injuries occasioned to the plaintiff by the alleged negligence of road commissioners in "making and repairing" a town way, under Pub. Sts. c. 52, § 3. *Held*, that the action could not be maintained, as the commissioners acted as public officers, and not as servants of the town.

Two ACTIONS OF TORT, for personal injuries occasioned to the plaintiffs on August 25, 1891, while driving along a county road in Weston called Central Avenue. Trial in the Superior Court, before *Blodgett*, J., who directed the jury to return a verdict for the defendant; and the plaintiffs alleged exceptions, in substance as follows.

There was evidence tending to show that the accident was caused by the failure of persons in general charge of the work hereinafter described to give warning to the plaintiffs that a steam drill was in operation on the avenue, and also by the acts of persons working upon the drill hereinafter described, in allowing steam to escape from the boiler while the plaintiffs were passing by, thereby causing the plaintiffs' horses to take fright.

In March, 1887, the town by a vote directed the road commissioners to petition the county commissioners to define the lines of Central Avenue.

Upon petition of the road commissioners " to define and locate the lines " of Central Avenue, the county commissioners, by an order passed October 19, 1889, laid out the avenue, and directed the town, on or before January 1, 1892, to " lay, open, construct, and complete said highway so that twenty-five feet in width thereof throughout the whole, exclusive of gutters on the sides, shall be safe and convenient," etc., and decreed that upon the completion of the work to their satisfaction the county should pay the town the sum of one thousand dollars, which they adjudged to be a fair and just proportion of the expense of the alteration to be paid by the county, and awarded to an abutter whose land was taken a certain sum as damages therefor, to be paid by the town with all other expenses of the work.

On March 24, 1890, the town passed the following votes under the following article in the town warrant :

" Art. 10. To see if the town will grant money to carry out the order of the county commissioners with regard to Central Avenue, or act anything relative to said order.

" Voted, that five thousand dollars ($5,000) be appropriated for repairs on Central Avenue to carry out the order of the county commissioners.

" Voted, that the town treasurer be empowered to borrow five thousand dollars ($5,000) on the note of the town countersigned by the selectmen, said loan to be called the Central Avenue loan."

On March 23, 1891, the following vote was passed under the following article in the town warrant:

" Article X. To appropriate money for continuing work on Central Avenue as laid out by the county commissioners.

" Voted to appropriate $5,000, to be expended for Central Avenue.

" Voted that the treasurer be empowered by and with the selectmen to borrow the sum of $5,000, to be expended on Central Avenue."

The road commissioners of the town, or some of them, carried out the order of the county commissioners without any

further vote of the town. The location of the county commissioners did not differ much from the old line of fences along the road, and the ledge which was being drilled for blasting was wholly within the old lines of the road, but jutted out so far into the travelled portion that it was necessary to blast part of it to get the twenty-five foot width required by the county commissioners' order. The town treasurer, upon the drafts of the road commissioners, paid the expense of the entire work, and after it was completed received from the county the one thousand dollars which had been awarded to the town as the share of the county towards the expenses.

One Cutter, who was one of the three road commissioners, testified that, by direction of the board of road commissioners, he and one other commissioner employed one Putney to blast this and other ledges for them in the course of the work, upon the terms that Putney should furnish the steam-engine and drill, and men to operate them, at a certain price per day for the drill and each man, and that they should do the drilling and blasting required by the road commissioners, the commissioners furnishing the fuel, water, and explosives; that Putney was there daily and had the immediate direction of the men, who took their orders from him; that he, Cutter, was not there daily, but one of the other road commissioners was, and had the immediate charge of the work, and gave orders to the other men employed and to Putney.

The defendant contended that the road commissioners in doing the work acted as public officers performing a duty imposed upon them by law, and that the town could not be held liable for their negligence, or the negligence of persons employed by them to assist in carrying on the work.

The case was argued at the bar in January, 1895, and afterwards was submitted on the briefs to all the judges.

*S. J. Elder & W. C. Wait*, for the plaintiffs.

*G. L. Mayberry*, for the defendant.

MORTON, J. These two cases were tried together, and both depend on the same facts, and the principal question in each is whether the road commissioners acted as public officers, or as servants of the town. We think that they acted in the former capacity, and not in the latter.

The office of road commissioner is of recent origin. It was first established by St. 1871, c. 158. By the second section of that act, it was provided that "said road commissioners shall have and perform exclusively all the powers and duties now vested by law in selectmen and surveyors of highways, concerning the laying out, altering, making, repairing, or discontinuing streets, ways, sidewalks, sewers, and drains." This was amended by St. 1873, c. 51, § 1, which substituted therefor a new section as follows: "Said road commissioners, in matters concerning streets, ways, bridges, monuments at the termini and angles of roads, guide-posts, sidewalks, shade trees, sewers, and drains, shall exclusively have the powers and be subject to the duties, liabilities, and penalties of selectmen and surveyors of highways." This section, with an added provision about the moving of buildings in public streets, forms Pub. Sts. c. 27, § 75, and that in turn forms St. 1893, c. 423, § 23, in regard to the powers and duties of town officers. It is evident that the object of the amendment was not to restrict the powers and duties of the road commissioners, but rather to enlarge them, or perhaps to make it clearer what they were originally intended to include. The purpose of the statute was to enable towns to unite in one board, for the sake of greater efficiency, powers and duties which, speaking generally, were exercised by the selectmen and surveyors of highways in regard to streets and ways, and to give them the exclusive control over such matters. And it is apparent that a board so constituted, and acting within the scope of its powers and duties, would act as a board of public officers, and not as servants of the town. *Walcott* v. *Swampscott,* 1 Allen, 101. *Tindley* v. *Salem,* 137 Mass. 171, 173 *et seq.,* and cases cited. *Blanchard* v. *Ayer,* 148 Mass. 174.

The plaintiffs contend, however, that the work in which the road commissioners were engaged upon Central Avenue did not come within their powers and duties as public officers. But we think that what they were doing fairly may be called a " making and repairing," within the meaning of Pub. Sts. c. 52, § 3. Although ordered by the county commissioners, the work did not relate to the construction of a new way, or the building of one that had been materially widened or lengthened, or changed from its original lay-out, but was in the nature of repairs to

and improvement of an existing way, and for the purpose of rendering it safer and more convenient to travellers. The petition under which the county commissioners acted was for the relocation of an existing way. What was to be done was spoken of in the first appropriation by the town as " repairs on Central Avenue," and the exceptions expressly state that the ledge where the work was being done at the time of the injury complained of was wholly within the old lines, and that the location by the county commissioners did not differ much from the old line of fences ; meaning, as we infer, that the old road and the road as located by the county commissioners were substantially the same. There is nothing to show that the removal of the ledge would not have been within the ordinary scope of the powers and duties of surveyors of highways. From the absence of any testimony as to the previous condition of the road, it is not easy to say that the repairs, though extensive, were not such as would have come within the province of the road commissioners after the town had appropriated the money for them. *Proctor* v. *Stone*, 158 Mass. 564. The fact that they were unusual, or permanent, or expensive, or authorized by a special vote and appropriation, would not prevent them from being of such a character. *Mitchell* v. *Bridgewater*, 10 Cush. 411. *Denniston* v. *Clark*, 125 Mass. 216. *Pratt* v. *Weymouth*, 147 Mass. 245. *Hennessey* v. *New Bedford*, 153 Mass. 260.

In *Craigie* v. *Mellen*, 6 Mass. 7, it was assumed without question that it was the duty of the highway surveyors to make safe and passable a town way which had been laid out for the inhabitants of Cambridge and approved by them. See also *Cyr* v. *Dufour*, 68 Maine, 492.

In *Callender* v. *Marsh*, 1 Pick. 418, 427, which has never been questioned as an authority, (*Burr* v. *Leicester*, 121 Mass. 241, 242,) it is said that the authority of highway surveyors " would seem to include everything which may be needed towards making the ways perfect and complete, either by levelling them where they are uneven and difficult of ascent and descent, or raising them where they should be sunken and miry." In consequence of this decision, and of the suggestions contained in it, a statute was passed giving a remedy to landowners who sustained damages by any act done in raising, lowering, or otherwise, for the purpose

of repairing a highway or town way. Rev. Sts. c. 25, § 6. Pub.
Sts. c. 52, § 15. But as was said in *Denniston* v. *Clark*, 125 Mass.
216, 225, " This statute does not affect the extent of the author-
ity of the public and its officers, or the principle upon which that
authority rests." It is true that it has been held that the powers
and duties of highway surveyors were confined to repairs, and
that neither they nor selectmen had authority by virtue of their
respective offices to build or contract for the building of new
ways, or of ways that were so widened or altered that what was
to be done would amount to the substitution of a new way for
an old one, either within the same or other lines. *Todd* v. *Row-
ley*, 8 Allen, 51. *Bemis* v. *Springfield*, 122 Mass. 110. *Dennis-
ton* v. *Clark*, 125 Mass. 216, 220. *Bean* v. *Hyde Park*, 143 Mass.
245. *Blanchard* v. *Ayer*, 148 Mass. 174.

There is no general rule defining what are repairs, and what
are changes or alterations so radical that they fairly cannot
be called such. *Proctor* v. *Stone*, 158 Mass. 564. The original
statute creating the office of highway surveyors gave them
power to amend as well as to repair ; (St. 1786, c. 81, § 1 ;) and
the law seems to have been liberally applied in favor of repairs.
Though the word " amend " was omitted in the Revised Statutes
and the later revisions, there is nothing to show that there was
any intention to restrict the powers of the surveyors within
narrower limits than those established by the original act.

By St. 1877, c. 58, (amending St. 1871, c. 298, § 2,) — which
abolished the payment of highway and town way taxes in labor
and materials, and provided that towns should raise by assess-
ment on the polls and estates of residents and non-residents
such sums of money as were necessary for making and repairing
highways and town ways, — it was provided that the sum so
voted should be expended by the surveyors of highways and
the road commissioners in making and repairing the ways; the
difference between the highway surveyors and road commission-
ers being that, in the case of the former, the expenditures were
to be under the direction of the selectmen, but in the latter not.
Section 2 of St. 1871, c. 298, with the amendment of St. 1877,
c. 58, was incorporated into and forms Pub. Sts. c. 52, § 3, on
which the defendant relies. The meaning of the word " mak-
ing " in this connection does not appear to have been considered,

or to have received any construction. In the act establishing the road commissioners it evidently meant something more than repairing. St. 1871, c. 158, § 2. In the present and earlier statutes it seems to have been used, in some instances, in a sense which would include building or constructing. Pub. Sts. c. 52, § 13 ; c. 49, §§ 9, 75. Rev. Sts. c. 24, §§ 10, 44, 47, 64 ; c. 25, §§ 9, 15. St. 1796, c. 58, § 1. St. 1818, c. 121, § 1. It is so used in the sewer acts. Pub. Sts. c. 50, §§ 1, 3, 4. But we do not think that it can be construed, in the section on which the defendant relies, as authorizing the road commissioners, whenever a new way is laid out in a town, to go on and build it. *Craigie* v. *Mellen*, 6 Mass. 7. *Cyr* v. *Dufour*, 68 Maine, 492. The road commissioners are not given power generally over the laying out, making, discontinuing, and repairing of ways, but only such powers as the selectmen and highway surveyors have, and such as are bestowed by the section under consideration. It is clear that neither the selectmen nor highway commissioners have authority to build new ways. We think that the jurisdiction of road commissioners is confined to existing ways, within lines corresponding substantially to existing lines, and possibly to making passable ways newly laid out; *Craigie* v. *Mellen, ubi supra ;* and that, as applied to them, the word " making " means more than repairing, and may properly include work of the general character of that which they were doing in this case upon Central Avenue, and that after the town had made the appropriation it was for the commissioners, in the absence of any further action on its part, to do the work with such instrumentalities, and in such manner, as seemed to them best. *Pratt* v. *Weymouth*, 147 Mass. 245. *Hennessey* v. *New Bedford*, 153 Mass. 260.

Although the duty of completing the road according to the lay-out and order of the county commissioners is imposed by statute upon the town, there can, we think, be no question that the town fulfils the duty thus imposed upon it if the money necessary to carry out the order of the county commissioners is appropriated by it, and the work is done by public officers duly chosen by it, and within whose jurisdiction it comes. Whether the work is done by public officers, or by persons specially appointed by the town, it is equally within the power of the county commissioners to see that their order is complied with.

The fact that the town voluntarily adopted the statute providing for the election of road commissioners can make no difference as to whether the commissioners were or were not acting as public officers.   *Tindley* v. *Salem, ubi supra.*

A majority of the court think that the exceptions should be overruled, and it is so ordered.          *Exceptions overruled.*