WILLIAM A. WHITE *vs.* INHABITANTS OF FOXBOROUGH.

Norfolk.   November 13, 1889. — February 1, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Widening of Town Way — Removal of Private Property — Notice — Assessment of Damages — Evidence — Extension of Time by Jury.*

The owner of a strip of land taken for the widening of a town way was notified by the selectmen to remove " his trees, fences, and other property " within a time limited.   The notice recited that in their report to the town the selectmen had allowed the owners of land so taken that limit of time within which to remove such property, but the report contained no such provision. *Held*, that the notice was insufficient, and that such owner, upon his neglect to remove such property within the limit, could not be deemed to have relinquished it for the benefit of the town, within the meaning of the Pub. Sts. c. 49, § 80.

The selectmen sent a similar notice to such owner to remove "his buildings or material " on the land taken within the same limit of time. *Held*, that no such relinquishment could be imputed to him upon his failure to conform thereto, and that the selectmen could deal with such property only as provided by the Pub. Sts. c. 49, § 17.

Upon a petition filed by such owner for a jury to assess his damages, it appeared that certain trees and a portion of a wall upon the strip taken were destroyed or used by the town in the widening; and that it was reasonable and proper for him to move a house standing partially on the strip, as well as necessary to fence his remaining land, and to grade it to the level of the way as constructed upon the widening. *Held*, that the value of the trees and wall, and the cost of the moving, fencing, and grading, were proper elements of damage to be considered by the jury.

At the trial of the petition it appeared that in the widening a strip equal in width to that of the petitioner was taken upon the opposite side of the way, and the respondent sought to set off against the petitioner's damages the benefit from the widening beyond that resulting from the taking of his land for that purpose.   The petitioner was permitted to introduce evidence that the public had for over twenty years used the strip on the opposite side of the street as a sidewalk, and had thereby gained a right by prescription to use it for that purpose. *Held*, that the evidence was competent.

The petitioner in the petition prayed for further time to remove his building from the strip taken, and the jury was permitted to extend his time for such removal in a verdict returned by them for the petitioner. *Held*, that the jury had no authority under the Pub. Sts. c. 49, § 81, to extend the time for the removal of buildings, but that such portion of the verdict might be set aside, and judgment be rendered for the petitioner upon the remainder.

PETITION to the Superior Court, filed November 18, 1887, for a jury to assess the damages caused by the taking by the respondent of land of the petitioner for the widening of Liberty Street,

a town way in Foxborough, and praying for further time for re-
moving a house partially standing thereon.   Trial in the Supe-
rior Court, before *Bishop*, J., who allowed a bill of exceptions,
in substance as follows.

It appeared that Liberty Street was first laid out as a town
way thirty-three feet wide in 1857, and as then laid out the
northerly line of the street formed the southerly boundary of
the petitioner's land.   In October, 1887, the town widened Lib-
erty Street, and in so doing took seven feet on the southerly
side of the petitioner's land, into which projected a corner of
his house.   The report of the selectmen thereon to the town
was made on October 10, and accepted by the town on October
19, but contained no provision as to the time within which the
trees, fences, and other property on the land taken should be
removed.   The selectmen, however, in a report made by them to
the town, also on October 10, with reference to the laying out
of Wall Street in continuation of Liberty Street, stated that
" we have allowed each of the owners of land through which
said way passes twenty days after the acceptance of this laying
out by the town to take off his trees, fences, and other property
which may obstruct the building of such way."   The petitioner
put in evidence a notice from the selectmen dated and served on
him on October 29, 1887, which stated that the "selectmen of
Foxborough, on the tenth day of this October, A. D. 1887, laid
out a widening of Liberty Street in said Foxborough, which
widening passes in part over land belonging to you ; said part
belonging to you included in said widening being described as
follows.   [Here follows a description of the land taken.]   Said
laying out was accepted by the town at a town meeting held on
the nineteenth day of said October, A. D. 1887.   And in said
laying out we allowed each of the owners of land through which
said way passes twenty days after the acceptance of the laying
out by the town to take off all the fences and other property
which may obstruct the building of such way.   You are hereby
notified to remove your trees, fences, and other property v. hich
may obstruct the building of said way, within twenty days from
date of said acceptance."

The petitioner also put in evidence another notice from the
selectmen to him, dated November 14, 1887, which stated that

" At a town meeting of the town of Foxborough, held on the nineteenth day of October, A. D. 1887, the town accepted of a widening of Liberty Street in said town ; a part of said widening took certain land of yours, fully described in notice from this board to you, dated the twenty-ninth day of October, 1887, to which reference is hereby made for a more full and particular description thereof; and in said laying out the owners of land so taken were allowed twenty days from the date of the acceptance thereof in which to remove buildings or materials on such land so taken ; and the twenty days so allowed having expired, and you having refused or neglected to take care of or to remove the building or material on the land so taken from you, you are hereby notified that unless you remove the buildings and materials on land so taken within five days from this date, we, as the selectmen and highway surveyors of said town, shall take care of, remove, or sell such buildings and material, according to the provisions of sections 80 and 17 of chapter 49 of the Public Statutes."

The petitioner testified that he did not remove any of said property, and made no effort to do so, and that he made no request for further time, and did nothing further in regard to the property, after receiving either notice; and no sale was made by the town.

There was a quantity of stones of various sizes on the petitioner's land along the line of Liberty Street, forming an irregular pile or wall, which the petitioner had collected from his land, and which had been accumulating for many years. Some of these stones were taken in the widening and used in building a sidewalk on the strip of land taken, and adjoining the petitioner's remaining land, seven feet in width, and varying from ten to twenty-four inches in height above the petitioner's land, and some were removed and used in building another street, and a large portion were left upon the land. The petitioner contended that four fruit-bearing apple trees which stood upon the strip of land taken were destroyed in the widening. The petitioner offered in evidence the cost of removing the house, the value of the stones taken and of the trees destroyed in the widening, as bearing on the measure of damages. To this evidence the respondent objected, contending that the property,

or such part thereof as belonged to and was part of the realty, had been forfeited by the petitioner; but the judge admitted the evidence.

It appeared in evidence that the sidewalk constructed in widening and altering Liberty Street had an average elevation above the land before the taking, and above the petitioner's adjoining land, of fifteen inches, but that the sidewalk when built was not raised in the main above the centre of the street, which was crowned in the centre; that the grade of Liberty Street, as to the establishment of which there was no evidence other than the fact that the crown of the street was constructed to its present height, had not been changed since its laying out in 1857; that no sidewalk had been constructed on the side next to the petitioner's land until after the widening, but the public had so used the street on that side as to form a foot-path lower than the crown of the street, and on the same level with the petitioner's adjoining land taken for the widening, which foot-path had served as a gutter during rainy weather; and that the land opposite the petitioner's land on Liberty Street was, and had been for some years, owned by Mrs. E. P. Carpenter, whose land had formerly been unenclosed, but she had before the widening erected a fence seven feet southerly from the southerly line of Liberty Street, which fence extended the whole length of her premises opposite the petitioner's land. The petitioner contended that this fence had been erected more than twenty years, (which the respondent denied,) and, against the respondent's objection, offered evidence tending to prove that the public had for twenty years or more used the strip of Mrs. Carpenter's land between the fence and the southerly line of Liberty Street as a sidewalk, and that thereby the public had gained a right to that strip of land, which was also taken in the widening of Liberty Street and for which she was awarded damages, to be used as a sidewalk by prescription, and consequently the street had become forty feet wide, instead of thirty-three feet wide as originally laid out. The petitioner contended that the jury could not therefore set off, as against the petitioner's damages, any special benefit the widening of the street might have to the petitioner's land, except from the widening of seven feet taken from his own land. The petitioner offered evidence to show the

expense of grading up his adjoining land by a regular slope, so as to conform to the grade of the sidewalk constructed on his land taken by the widening, and of the damage resulting from cutting off his entrance to his remaining land.    To this evidence the respondent objected, but the judge admitted it.

The petitioner offered evidence, which was admitted against the respondent's objection, of the cost and expense of providing a fence suitable to the land and locality, the respondent contending that the petitioner should in no event be allowed any greater sum than the value of the fence which existed before the widening.

The petitioner requested, among others, the following rulings and instructions to the jury:

" 1. If the highway known as Liberty Street had, previous to the present widening, since its first laying out, been used and occupied by the public, along the side next to the petitioner's land, at the same grade as the adjoining land of the petitioner, and without any sidewalk except such as had been created by the path along that side of the street which the public had used, this petitioner is entitled to recover for all damages arising from the construction of a sidewalk upon the land taken from this petitioner along the line of the petitioner's remaining land, and for the raising of the level of the sidewalk constructed upon the land taken from him above the grade of the petitioner's land, if such raising and construction is a part of the actual work .of widening said street under that taking. . . .

" 3. The use of a sidewalk for twenty years continuously and without interruption by the public as a part of the highway to which it is adjoining, which sidewalk is separated from the lands of the adjoining owner by a fence erected and maintained by the owner thereof, excluding it from his remaining lands, establishes such sidewalk as a public way by prescription. . . .

" 6. The jury may extend the time for the petitioner to remove his building from the highway as established by the taking."

The respondent requested the judge to instruct the jury as follows:

" 1. If the petitioner has not complied with the notice to remove that portion of his building, or any other property,

standing on the land taken, and if the expense of said removal is equal to or exceeds the damage caused to the building, or other property, by said removal, then the petitioner cannot recover for any damage to said building, or other property, caused by said removal.

"2. If the petitioner has not complied with the notice to remove that portion of his building standing on the land taken, and if it would be a proper and reasonable method in widening the street to remove the whole building back on the remaining land of the petitioner, the respondent has a right so to remove said building, and to place it relatively in the same position to the street as it was before the widening, and the jury in estimating the petitioner's damages should deduct from the total damages any reasonable expense that such removal might cause.

"3. The selectmen having notified the petitioner to remove his building and other property standing on the land taken, and he having refused or neglected to remove said building or property, he cannot now recover for any damages the widening may have caused to said building or other property.

"4. Public Statutes, chapter 52, section 15, does not apply to this petition. If in the original laying out of Liberty Street a grade was established, the damages to which the petitioner was then entitled included any changes in the surface of the land injurious to him, and the presumption is that the petitioner received full damages for the injury thus caused, or that he waived his claim to damages. The town had then a right to raise the street through its entire width up to the grade thus established, and the building of a sidewalk up to that grade at any time would not be a change of grade for which the petitioner could recover. If, in widening Liberty Street, the grade to which the respondents had a right to maintain it was unchanged, and the difference of grade between the street and the petitioner's remaining land was substantially as it was before the widening, then the petitioner cannot recover, as a specific item of damages, any cost of grading the petitioner's remaining land. If, the crown of the street has remained unchanged since the street was laid out, and there is no record evidence of what the grade at that time was, then the crown of the street must

be presumed to be the height of the grade for the entire width of the street."

The judge refused to give the instructions requested by the respondent, and, after having instructed the jury that in determining the amount of pecuniary damage, or loss, if any, suffered by the petitioner, they should ascertain the value of the land taken, and the damage, if any, to the petitioner's remaining land, and that against these should be offset such special benefit, if any, as the petitioner had received by the widening not shared by the community in general; and having defined the nature of such special benefit, and what would constitute the same, and having cautioned the jury that they should not allow any of the items bearing upon the question of damages to withdraw their attention from this principle, to which instructions no objection was made, also instructed the jury, that, in considering the way in which this widening affects the petitioner's estate and the damage to his remaining land, it would be necessary for them to consider the cutting off of the building and the changing the grade of the sidewalk, if they found a change to have been effected adjacent to the petitioner's land; that in considering these points they should inquire what was a proper and reasonable mode of treating the premises after widening, and whether it was a proper and prudent mode to remove the house, or to repair the end cut off; and that in general, in estimating damages, those things which are needful to be done after the widening in order to such use of the premises relatively as the petitioner had before might be considered. The judge further instructed them as follows: " Under the statute, the selectmen fix a certain time within which the petitioner, in a case like this, may remove his house. The expense of such removal is an element of damage to be considered by you, together with the other elements and all the considerations in the case, in estimating the damages which should be given to the petitioner, in case you deem the removal of the house to be a reasonable and proper thing to do. . . . If these stones, upon the evidence before you, constitute a wall, then they are part of the realty, a part of the real estate, and this petition covers them. If, on the other hand, they were a collection of stones such as is sometimes made for the purpose of use or disposition as occasion may require, and were not a

wall, they then are personal property, and are not covered by this petition. . . . If there were any proof in this case, if it were a fact that the town had exercised this right of removal of the building, if the town had removed the building, it would be a proper subject, in my opinion, for deduction and offset; but I do not instruct you that you can, in passing upon the question now, — the evidence before you being that the town has not removed the building, — fix a sum to be deducted as the expense of the town, or anticipate that the town will remove it."

The judge gave the first ruling requested by the petitioner, saying that it was given subject to the general principle above stated, and that the jury should so consider it, as well as the third ruling requested by him; and further instructed the jury, "that, if you find this sidewalk before the widening was in use by the public continuously and regularly as a part of said highway for a period of twenty years or more, that throws that portion of the land open to the public, as part of the public street."

The judge also instructed the jury, "I cannot lay down to you an absolute rule as to whether you should determine that a fence or wall is a reasonable and proper thing to be placed by the petitioner upon his line, as it now exists since the widening. I have already stated to you the general principles, that this property is to be treated in a reasonable and proper manner, as a prudent and wise man would do. There are circumstances under which a fence would be a very proper and indeed a necessary thing to be placed upon land after it is opened, or after a street is widened. There are other circumstances under which, after a street is widened, a jury might well come to the conclusion that a fence or wall would not be properly required by the exigencies of the case, to come in as an element in the estimation of the damages. And therefore I say that this, as well as the other elements in the case, is to be for your judgment and your consideration, under these general principles which I have laid down, as to whether it was a thing which a fair and proper treatment of the premises would call for. . . . I am asked to instruct you, that 'the jury may extend the time for the petitioner to remove his building from the highway as established by the taking.' I give you that instruction, so that, if you see

fit to do so, you can extend the time in which the petitioner may remove his building from the highway."

The jury returned a verdict in favor of the petitioner, and extended the time of removing the building to July 15, 1888; and the respondent alleged exceptions.

*T. E. Grover*, for the respondent.

*C. A. Reed*, for the petitioner.

DEVENS, J. The decision of several of the exceptions to the rulings of the presiding judge depends upon the inquiry whether the petitioner received any sufficient notice to remove his "trees, fences, and other property" which might obstruct the building of the way, and whether, if he failed so to remove them, he is to be deemed to have relinquished his right thereto for the benefit of the town. Pub. Sts. c. 49, §§ 80, 81. While no distinct ruling on these points appears by the bill of exceptions, the trial was evidently conducted upon the theory that there had been no such notice, or certainly no such relinquishment; and that the petitioner was entitled to have the jury consider, in determining the value of the land taken from him and the injury done to the remaining land, that certain trees and stones in a certain fence were actually taken and used in the widening, and that the corner of a house owned by the petitioner projected into the proposed way, so that he would be compelled to remove the same, if such was a reasonable mode of managing his property, or otherwise sustain the injury done by cutting it off.

While the damages sustained by a landowner, a part of whose land is taken for the widening or construction of a town way, are to be assessed and awarded upon the same principles as provided "for the assessment and award of damages by county commissioners in laying out highways," (Pub. Sts. c. 49, § 68,) the mode of laying out or widening the same is different. In laying out a highway by the county commissioners, their order states the time allowed an owner to remove his property from the land taken, and no further notice to him is necessary. *Murray* v. *Norfolk*, 149 Mass. 328. But a town way is laid out primarily by a vote of the town, after a determination to that effect is made by the selectmen or road commissioners of the town, and reported to it. Pub. Sts. c. 49, § 71. Provision is made for appeal to the county commissioners, in the case of selectmen

unreasonably refusing to lay out town ways, or of the town unreasonably refusing to accept the same. §§ 73, 74. When such a way is laid out, the selectmen are, in their report or return, to specify the manner in which it shall be completed, transmit to the clerk a description of the location and bounds thereof, to be by him recorded; "and they shall allow the owner of the land through which the way passes a reasonable time to take off his trees, fences, and other property which may obstruct the building of such way." § 80. Neglect to remove such property within the time allowed is treated as a relinquishment of the same for the benefit of the town, except in regard to buildings or materials on the land, as to which a different provision is made. §§ 17, 80. It is contemplated by § 80 that the adjudication as to the "reasonable time" to be allowed to the owner will form a portion of the report of the selectmen, so that, when accepted by the vote of the town, the order will be complete, as in the case of the county commissioners, who make such adjudication a part of their order. Nor is there any difficulty in this, as, even if it is uncertain when the report will be accepted by the town, it would ordinarily be done by providing that the time should be so many days after the acceptance thereof.

The report of the selectmen by which Liberty Street was widened was made on October 10, 1887, and was accepted on October 19, 1887. No provision was made in it for any time within which the trees, fences, and other property should be removed. On October 29, 1887, a notice from the selectmen was served on the petitioner, which stated that in their laying out, which was accepted on October 19, 1887, they had allowed to each of the owners of the land through which the way passed twenty days after the acceptance thereof to take off all trees, fences, and other property. In preparing this notice, the selectmen evidently had not re-examined their laying out of Liberty Street, which contains no such provision. As the laying out of Wall Street, which was accepted the same day, does contain a similar provision, it is quite probable that it was omitted by inadvertence. Whether the functions of the selectmen as a public body authorized to lay out town ways subject to acceptance of the town, are so far terminated on such acceptance that they cannot thereafter adjudicate what

is a reasonable time for the removal of property, and give a binding notice thereof, we have no occasion to consider. If they have such authority, a notice based on an erroneous recital of the laying out, and not purporting to be in itself an adjudication on this point, cannot be sufficient to subject the owner to the serious consequences which must follow neglect of it.

Nor do we think such an effect can be given to the notice of November 14, 1887. This related only to the building and materials, which had not been specified in the previous notice of October 29, which mentioned only " trees, fences, and other property." By the Pub. Sts. c. 49, § 17, which are applicable in the case of town ways, if the owner of any building or materials neglects to remove them after reasonable notice, the commissioners or selectmen may take such care of them as safety demands, may remove the same on adjoining land of the adjoining owner,' or may sell the same at public auction, etc. This notice repeats, in a somewhat different form, the erroneous statement that the selectmen had allowed in their laying out twenty days to the owner after the acceptance by the town " to remove the buildings and materials on such land so taken," and notifies the petitioner that, the twenty days having expired, unless within five days he removes the buildings and materials, the selectmen and highway surveyors of the town will " take care of, remove, or sell such buildings and material," according to the provisions of the Pub. Sts. c. 49, §§ 17, 80.

It was held in *Murray* v. *Norfolk, ubi supra,* that the property specified in the Pub. Sts. c. 49, § 17, was not included in § 9 of the same chapter, which specifies " timber, wood, or trees," and provides that they shall be deemed to be relinquished if not removed within the time limited, and that a different rule was prescribed for the artificial structures erected on the land, and their materials. In the case of such structures, the value of the property is intended to be carefully preserved to the landholder, and the provisions in relation thereto are so inconsistent with those of § 9 that they cannot be applied to the same property. For the same reason, property specified in the Pub. Sts. c. 49, § 17, is not included in § 80 of the same chapter, where the phrase used is " trees, fences, and other property." If the notice had been properly given, and the petitioner had failed to

remove his building within the reasonable time fixed by it, his building would not have been deemed to be relinquished, which is the rule in regard to "trees, fences, and other property." The selectmen would simply have been empowered to deal with them under the authority given by § 17. Under the notice as to the building, however, no action whatever has been taken by the selectmen.

It is suggested that, as the petitioner has elected to proceed under the statute, he cannot now object that the proceedings as to the laying out, or the notices, were irregular. It is true that the petitioner cannot object that there was no lawful laying out, and thus that the defendants are to be treated as trespassers. *Foley* v. *Haverhill*, 144 Mass. 352. *Murray* v. *Norfolk*, 149 Mass. 328. The petitioner does not seek to do this. He recognizes the laying out as valid. His contention is only that in this matter the respondent, or the selectmen who acted in its behalf, have not taken those steps which were necessary to deprive him of his right to damages, or to put him in such a situation as to be deemed to have relinquished his property.

Assuming that the notices given by the selectmen cannot have such an effect, we proceed to consider whether the respondent has any just ground of exception to the ruling of the presiding judge in the matter of damages. The jury were instructed, that, in determining the amount of pecuniary damage or loss suffered by the petitioner, they should ascertain the value of the land taken, and the damage, if any, to the petitioner's remaining land ; and that against these should be set off such special benefit, if any, as the petitioner had received by the widening, not shared in by the community in general. The nature of such special benefit, and what would constitute the same, were defined, and the jury were cautioned not to allow any evidence of items bearing upon the question of damages to withdraw their attention from this general principle. To these instructions no exception was taken.

The respondent objects, however, that in determining the injury to the plaintiff the jury were allowed to consider certain items which they should not have been allowed to treat as bearing upon it. It contends that they should not have been allowed to consider the value of the trees, or of the stones which formed

a portion of the wall. As these were destroyed or used by the respondent, unless it could be deemed that they were relin, quished, — and we must hold otherwise where no proper no, tices were given, — there is no reason why these values should not be included in the estimate of the damages. There was a dispute whether the stones in the fence were mere loose stones, hastily thrown together, and, under the instruction, the petitioner was not permitted to recover for them unless they constituted a wall, and were " a part of the real estate," and were thus covered by the petition. The value of the stones taken and trees destroyed, and thus appropriated to public use, bore directly on the question of the indemnity the petitioner was entitled to receive.

Nor has the respondent any ground of objection to the rule of damages as given in regard to the house, a portion of which would be cut off when the widening took place unless it were removed. The jury were instructed to inquire whether it was a proper mode, in the management of the property, to remove the house, or to repair the end cut off, and that the expense of removal was an element of damage if it was a reasonable and proper thing to remove the building under all the circumstances of the case. We do not understand that the respondent makes any objection to these instructions, except that they are precisely what should have been given if there had been no notices. As we have held that the notices were ineffectual for the purpose of enabling the respondent to treat the petitioner's property as relinquished, or of depriving him of his right to remove his building, they do not require discussion. Nor has the respondent any ground of complaint because of the ruling of the court which permitted the jury to consider whether it would be necessary to fence the land after the strip taken by the respondent was thrown into the widening. In connection with the general principle that the property was to be treated in a reasonable manner, and as a prudent man would do, they were permitted to consider, under the circumstances, whether there was any necessity of fencing which could properly be considered an element of damage. To have instructed, as matter of law, in conformity with the request of the respondent, that damages could only be allowed to the amount of the fence destroyed,

would have been obviously wrong; as it may be, even if no fence, or one of far less value, would have been necessary before the widening, that a more valuable one would be required thereafter. *Commonwealth* v. *Coombs*, 2 Mass. 489, 492. *First Parish in North Bridgewater* v. *Plymouth*, 8 Cush. 475. *Stone* v. *Heath*, 135 Mass. 561.

The grade of Liberty Street, on which the petitioner's land was situated, had never been established by any order, but there had been no change in it as the street was used. The street, as worked, was rounded off from its crown towards the petitioner's land, and there had been a path along the side of it lower than the crown of the street, which had been used by foot passengers when dry, and had served as a gutter in wet weather. The petitioner's land ran back from this, nearly on a level. There being no regular sidewalk, the grade at the northerly line of the street, next the petitioner's land, was about the same as that of his land. After the widening, while the crown of the street was not changed, a sidewalk was built on the land taken, the grade of which was about fifteen or sixteen inches higher than the petitioner's remaining land, although the sidewalk itself was not higher than the crown of the street. The petitioner was permitted to introduce evidence, against the objection of the respondent, of the cost of grading his land as high as the grade of the sidewalk, and extending back therefrom in a regular slope, as an element of damage,; and the jury were instructed, in accordance with the request of the petitioner, but subject to the general principle which the court had announced as one by which they should be guided throughout, that "if the highway known as Liberty Street had, previous to the present widening, since its first laying out, been used and occupied by the public, along the side next to the petitioner's land, at the same grade as the adjoining land of the petitioner, and without any sidewalk except such as had been created by the path along that side of the street which the public had used, this petitioner is entitled to recover for all damages arising from the construction of a sidewalk upon the land taken from this petitioner along the line of the petitioner's remaining land, and for the raising of the level of the sidewalk constructed upon the land taken from him above the grade of the petitioner's land, if such raising and construc-

tion is a part of the actual work of widening of said street under that taking." That the construction of the sidewalk and raising the grade of the land taken would injuriously affect the relation which the remaining land bore to the highway, is probable, and the jury might consider whether grading up the remaining land was a proper mode of meeting the difficulty. The respondent contends that it had the right to construct a similar sidewalk within the limits of the highway as it formerly existed; that this would have made the same difference in grade between it and the petitioner's land; and that the petitioner would be entitled to recover a less sum as grade damages if the sidewalk was merely extended seven feet in width on his land, than he would if the respondent, having no right to build a sidewalk up to the grade of the crown of the street within its old limits, had, by building a sidewalk on the land taken, raised the grade of the sidewalk fifteen or sixteen inches above the petitioner's land, as in the one instance there would be a change of grade, in the other none. The respondent has no right to assume that it could have erected a sidewalk within the original limits, which would have had the effect of injuring the petitioner's remaining land by leaving it at a lower grade than the sidewalk, without paying damages therefor. The Pub. Sts. c. 52, § 15, give to the owner of land adjoining a highway or town way a remedy for any damage sustained " in his property by reason of any raising, lowering, or other act done for the purpose of repairing such way "; and had such a sidewalk been erected within the original limits of the way after it had been constructed and prepared for travel, the owner of the land could have maintained his claim for compensation. *Burr* v. *Leicester*, 121 Mass. 241, 242. The proceedings in the case at bar are not, it is true, under the Pub. Sts. c. 52, § 15, as the respondent urges; but the existence of that statute shows that the theory that the respondent might change the grade by erecting the sidewalk within the original limits, without paying damages therefor, is erroneous. Again, whatever might be the rule as to damages for a change of grade within the original limits of the way, when, as a part of the actual work of widening the street, and of its construction, a sidewalk is made upon the land taken from the petitioner, and raised above the remaining land to its injury, it is a proper

element of damage to be considered by the jury. It was held in
*Fall River Print Works* v. *Fall River*, 110 Mass. 428, that, in
an assessment of damages to land by widening or altering a
street, the petitioner could recover for damages occasioned by
raising the level of a sidewalk, if such raising was part of the
actual work of widening the street. The construction of a side-
walk, if a part of the actual work of widening, would certainly
not be less a matter to be considered in the assessment of dam-
ages, than the raising of a sidewalk already in existence. To
this effect was the instruction.

The petitioner contended that the respondent could not set
off, as against his damages, any benefit the widening of the
street might have been to his land, except the widening by
the width of the seven feet taken from his own land; and, to
support this contention, offered evidence that the public had,
for twenty years and more, used the sidewalk next to Mrs.
Carpenter's land, (which was also taken, and was opposite that
of the petitioner,) and had thereby gained a right to that land
to be used as a sidewalk by prescription. To the admission
of this evidence the respondent excepted. It appeared that
this land of Mrs. Carpenter had formerly been uninclosed, but
that she had, before the widening, erected a fence extending
the whole length of the premises, opposite the petitioner's land,
seven feet southerly from the southerly line of Liberty Street,
which the petitioner claimed to have been erected for a period
of more than twenty years, although this was controverted by
the respondent.

The court instructed the jury, " that, if you find this sidewalk
before the widening was in use by the public continuously and
regularly as a part of said highway for a period of twenty years
or more, that throws that portion of the land open to the public,
as part of the public street." The respondent urges, that this
use may have been permissive, and not under a claim of right,
and adverse; or it may even have been against the notice and
objection of the owner of the land; and that therefore the in-
struction was defective. It is more than probable, that, as actu-
ally given to the jury, this instruction was amplified, and that
the meaning of the words " in use by the public continuously
and regularly as a part of said highway," was fully explained.

Under this instruction, we cannot suppose that the jury could have inferred that a permissive use, or one interrupted and not continuous, would have the effect of making the strip a part of the highway. The respondent called no attention to any deficiency in it, nor does it appear to have excepted to the instruction, although it did to the admission of the evidence. This evidence was certainly competent, as it bore directly upon the question whether the public had gained a right of way by prescription over the strip of Mrs. Carpenter's land taken for the widening and used as a sidewalk. That a highway may be established by prescription in the same way that it could be before the St. of 1846, c. 203, and that this statute relates only to ways by dedication, which cannot thus be established except after a formal laying out in the manner prescribed, has been often decided. *Jennings* v. *Tisbury*, 5 Gray, 73. *Commonwealth* v. *Coupe*, 128 Mass. 63. *McKenna* v. *Boston*, 131 Mass. 143. *Veale* v. *Boston*, 135 Mass. 187. " Since that statute, as well as before," says Chief Justice Morton in *Veale* v. *Boston*, " a way may be proved by long and continued use and enjoyment by the public, upon the ground that a conclusive presumption arises from such use that it has been established by competent authority. And the cases before cited decide that such a use, continued for twenty years, proves a way by prescription, so as to render a city or town in which it is situated liable to keep it in repair." The respondent also contends, that, even if the town had gained a right in this strip of land of Mrs. Carpenter by prescription, it was lost when, in October, 1887, the town accepted the selectmen's report, which recognized the old line of the street as contended for by the respondent, and established the new line, by which the very land in which the petitioner contended that the public had gained a prescriptive right was taken, and for which Mrs. Carpenter was awarded damages. The respondent therefore urges, that, as damages were to be assessed at the time of taking the petitioner's land, at that time the public had no right in this land. No such question as this was raised at the trial, or presented to the presiding judge. It would not be profitable to consider whether, if it had been, it would have affected the case.

The petitioner asked that the jury should extend the time within which he should be allowed to remove his building.

We have no doubt of the right of the petitioner, under § 17, to remove his building, even after the time assigned for its removal had expired, if at that time no action had been taken. We are not, however, prepared to hold that the authority given to a jury by the Pub. Sts. c. 49, § 81, to extend the time for the landowner to remove his " trees, fences, and other property," applies to buildings. While these words are used in § 80, buildings and materials are excepted expressly therefrom in that section ; and the provision of § 81, by which a failure to remove within the extended time is to be deemed a relinquishment, shows that it is applicable to property other than buildings and materials. We have already stated our reasons for holding that buildings and materials included in § 17 are not included either in § 9 or in § 80. The careful provision that is made in § 17 for the preservation of their value to the owner, if they are not removed within the time notified, renders it much less important that there should be an extension of time than in those cases where a failure to remove would operate as a relinquishment of the property. While this portion of the verdict was erroneously rendered, it is readily separable from the other, and judgment can be rendered on the latter for the plaintiff. This being done, the entry will be,                              *Exceptions overruled.*